**PARKSIDE TOWNHOMES ASSOCIATES,**
**Appellant,**

v.

**BOARD OF ASSESSMENT APPEALS OF YORK COUNTY**

v.

**SPRINGETTSBURY TOWNSHIP and Central York School District.**

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 1997.
Decided April 29, 1998.

Robert W. Hallinger, Lancaster, for appellant.

Steven M. Hovis, York, for appellee, Central York School District.

Before COLINS, President Judge, and McGINLEY, SMITH, FRIEDMAN, KELLEY, FLAHERTY and LEADBETTER, JJ.

FLAHERTY, Judge.

Parkside Townhomes Associates (Parkside) appeals from an order of the Court of Common Pleas of York County which directed a verdict in favor of the Intervenor, Central York School District (School District). We vacate and remand.

Parkside is a low-income housing project consisting of residential townhomes. The housing project is owned and operated by a limited partnership, which purchased the units in August 1990 for $4,550,000.00. The housing project was designed to qualify for the federal low-income housing tax credit program under § 42 of the Internal Revenue Code of 1986. In Pennsylvania, the program is administered by the Pennsylvania Housing and Finance Agency. Individual townhome units are owned by investors, who lease the units to qualified low-income tenants and then take advantage of the federal low-income housing tax credit. The rental units have the benefit of low-income housing tax credits for a period of ten years which are, upon sale of the property, transferable to a subsequent owner. In addition, rent restrictions are imposed for a period of fifteen years. The $4,550,000.00 purchase price reflected the value of the real estate as well as the value of the tax credits.

Parkside was assessed in October 1990 using a market comparison method based on the price paid by the investors for the individual units. The assessed value was approximately $3.5 million.

At the non-jury trial, which concerned the tax years from 1990 to 1994, the Board of Assessment Appeals of York County (Board) submitted its assessment record into evidence and Parkside presented the testimony of their appraiser. Parkside's real estate appraiser submitted a value of $1,250,000.00 for the housing project for the 1990 tax year and a value of $1,640,000.00 for the tax year 1994, based on its use as low-income rental housing. He estimated the project's market rent potential by comparing actual rental income and operating expenses for the Parkside units to market rents and expenses for four apartment complexes similar to the Parkside project. The expert did not consider the value of the tax credits because, under his methodology, the credits constitute intangible property not part of the real estate.

The trial judge determined that the testimony of Parkside's expert real estate appraiser was not valid on the ground that his appraisal did not address the housing project's market value. The trial court noted that Parkside's appraiser specifically stated that he was not giving any consideration to the tax credits. In addition, he refused to consider the sale proceeds of the rental units the previous year when the units were purchased.

The judge directed a verdict in favor of the School District because Parkside did not present any relevant evidence as to an alternative appraisement value and thus failed to meet its evidentiary burden.[1] This appeal followed.

■ Our scope of review is limited to determining whether the trial court abused its discretion, committed an error of law, or reached a decision which lacks substantial evidentiary support. *Walnut–Twelve Associates v. Board of Revision of Taxes of the City of Philadelphia*, 131 Pa.Cmwlth. 404, 570 A.2d 619 (1990), *petition for allowance of appeal denied*, 525 Pa. 652, 581 A.2d 577 (1990).

---

1. In *Deitch Co. v. Board of Property Assessment Appeals and Review of Allegheny County*, 417 Pa. 213, 221, 209 A.2d 397, 402 (1965), our Supreme Court described the proper order of proof in a tax assessment case is as follows:

The proceedings in the trial court are de novo and the proper order of proof in cases such as the present one has long been estab-

lished. The procedure requires that the taxing authority first present its assessment record into evidence. Such presentation makes out a prima facia case for the validity of the assessment in the sense that it fixes the time when the burden of coming forward with evidence shifts to the taxpayer. If the taxpayer fails to respond with credible, relevant evidence, then the taxing body prevails.

The issues in this case are: (1) whether the value of low-income housing tax credits may be considered in determining the market value of the project for assessment purposes based on: the Supremacy Clause, the meaning of "real estate" in The General County Assessment Law (Law)[2], and public policy, (2) whether the trial court improperly excluded the testimony of Parkside's expert and (3) whether the trial court erred in directing a verdict in favor of the School District.

Initially, Parkside maintains that the trial court erred in determining that the value of the federal low income housing tax credits should be considered in establishing the fair market value (FMV) of the real estate because such an interpretation is prohibited by the Supremacy Clause of the United States Constitution inasmuch as it would frustrate the purpose of the tax credit program, which is to encourage the production of low-income rental housing, by diminishing the incentive for private owners to develop low income housing. The trial court responded to Parkside's argument by stating that "[s]ince the Court is merely taking the Federal tax credits into account in determining fair market value, it is not imposing a tax on those credits, and is therefore not violating the Supremacy Clause." (Trial court opinion at 3.) Parkside nonetheless maintains that although the federal tax credits are not being taxed directly, under the Supremacy Clause, the Law cannot be interpreted to permit consideration of the added value of the federal tax credits in property tax assessments because it interferes with the goal of § 42, and is therefore preempted by federal law.

▃▃ Initially, we note that the Supremacy Clause provides in pertinent part that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl.2. Where, as here, a federal statute does not expressly declare that a state law is to be preempted or where there is no actual conflict between the requirements of state and federal law, there must be "evidence of congressional intent to pre-empt the specific field covered by the state law." *Wardair Canada, Inc. v. Florida Department of Revenue*, 477 U.S. 1, 6, 106 S.Ct. 2369, 2372, 91 L.Ed.2d 1 (1986). An intent to pre-empt may be found where the state or local legislation at issue would impede the accomplishment and the full purposes and objectives of Congress. *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Contrary to Parkside's contention however, it has failed to prove how consideration of the § 42 tax credits in assessing FMV interferes with the purpose of § 42.

Although Parkside relies on *Xerox Corporation v. County of Harris*, 459 U.S. 145, 103 S.Ct. 523, 74 L.Ed.2d 323 (1982), where the Supreme Court held that state and local property taxes were pre-empted under the Supremacy Clause, that case is distinguishable. In *Xerox*, the local government attempted to impose taxes on goods stored duty free in a federally regulated customs warehouse. The Court observed that while goods were in the warehouse, they were under the joint custody of the United States Customs Service and the proprietor of the warehouse and under the control and supervision of customs officers. Moreover, detailed federal regulations controlled the manner in which the warehouses were to be operated. The Court also noted that "Congress created secure and duty-free enclaves under federal control in order to encourage merchants here and abroad to make use of American ports." *Id.* at 151, 103 S.Ct. at 527.

The Court held that state and local taxes imposed on goods held in these warehouses were preempted by Congress' comprehensive regulation of customs duties. In this case, unlike the customs warehouse in *Xerox*, there is no comprehensive federal scheme encompassing the tax credit program as the tax credit program is administered by the individual states. Moreover in *Xerox*, Congress mandated that goods stored be stored

---

**2.** Act of May 22, 1933, P.L. 853, *as amended*, 72     P.S. §§ 5020–1—5020–602.

duty-free for prescribed periods. There is no such Congressional mandate in this case.

Parkside's reliance on *Barbieri v. Hartsdale Post Office*, 863 F.Supp. 152 (S.D.N.Y. 1994) is also misplaced. In that case, a town refused to recognize a corrected postmark issued by the United States Postal Service. The court determined that failure to recognize the postmark was in direct conflict with federal law. Unlike *Barbieri*, in the present case there is no federal law which prohibits the consideration of the tax credits.

■ Parkside also maintains that in accordance with the Law, only real estate is to be valued, assessed and taxed by local government and the tax credits are not part of the real estate. As defined in *The Appraisal of Real Estate*, "real estate" is limited to land and improvements.[3] Thus, because federal tax credits are not part of real estate, they are not subject to taxation under the Law.

However, we agree with the Board that those definitions relied on by Parkside are found in *The Appraisal of Real Estate*, and not the Law. Moreover, by establishing the *Johnstown Associates* doctrine, our Supreme Court has determined that in assessing the FMV of a property, a court must consider the economic reality associated therewith. In *Johnstown Associates*, 494 Pa. 433, 431 A.2d 932 (1981) rents in a subsidized housing project were fixed by the Department of Housing and Urban Development. The rent was fixed below the prevailing rate for comparable non—subsidized units and the property at issue could not be sold for sixteen and one-half years following construction. "The land owner argued that the rent restrictions should be considered in valuing the property. Our Supreme Court agreed, holding that the certitude that the property did not have the potential for rental profit increases must at least be considered." *Appeal of Property of*

*Cynwyd Investments*, 679 A.2d 304, 309 (Pa. Cmwlth.1996), *petition for allowance of appeal denied*, 546 Pa. 671, 685 A.2d 549 (1996). Similarly, the Court observed that tax shelter benefits specific to a property also affect its value. *Johnstown Associates*, 494 Pa. at 440, 431 A.2d at 935. Tax related benefits associated with investment property ownership inherently affect value and the court is not constrained to determine FMV as though the property lacked tax shelter features. *Id.* Thus, the court did not err in considering the affects of the tax credit, as it is part of the economic reality.

■ Parkside also maintains that the tax credit should not be considered in establishing the FMV because such an interpretation of the Law is inconsistent with the policy of the state and federal housing and tax statutes. Specifically, such an interpretation of the Law, would run counter to the state and federal policy of encouraging low income housing development by diminishing the federal tax credit through local taxation thereof. However, as previously stated, "depreciation tax shelter benefits associated with investment property ownership inherently affect market value, and the court is not constrained to determine market value as though real property ownership lacked tax shelter features." *Id.*

Next, Parkside maintains that the trial court erred in rejecting the expert opinion of Martin Skolnik. In his appraisal, Skolnik, although aware of the § 42 tax credits and the sale price of the individual units, determined that these factors were not relevant and refused to include them in his appraisal. The trial court determined that absent consideration of the § 42 tax credits, Skolnik's testimony was not competent. We disagree.

■ In a tax assessment case, the testimony of a qualified appraiser who recites the

---

**3.** *Real estate is the physical land and appurtenances affixed to the land, e.g., structures.* Real estate is immobile and tangible. The legal definition of real estate includes land and all things that are a natural part of land ... as well as all things that are attached to it by people.... All permanent building attachments ... as well as built-in items ... are usually considered part of the real estate. Real estate includes all attachments, both below and above the ground.

*Real property includes all interests, benefits, and rights inherent in the ownership of physical real estate.* A right or interest in real estate is also referred to as an *estate*. Specifically, *an estate in land is the degree, nature, or extent of interest that a person has in it.*

*The Appraisal of Real Estate*, (10th ed.,) (emphasis in original).

factors considered and the values arrived at therefrom is competent. *Appeal of Rieck Ice Cream Co.*, 417 Pa. 249, 209 A.2d 383 (1965). Although Skolnik did not take into account the effect of the tax credits, such does not make his testimony incompetent.

In *Appeal of Cynwyd*, one of the issues presented to this court was whether the appraiser's testimony was incompetent because while valuing a warehouse, although he considered existing leases, he made no adjustment to his appraisal. This court reviewed the Supreme Court's decision in *Appeal of Johnstown*, wherein it was held that federally regulated rent restrictions should be considered in an assessment and *Appeal of Marple Springfield Center, Inc.*, 530 Pa. 122, 607 A.2d 708 (1992) wherein the Court extended the holding of *Appeal of Johnstown* by concluding that long term leases not due to federal regulation of the property should also be considered in appraising property.

In *Appeal of Cynwyd*, "[t]he Board's expert testified that he did consider the existing leases but made no separate calculation in determining that the market value of the property was $3.00 per square foot. Even if the difference between contract rent and market rent would have been significant, once he testified that he took contract rent into consideration but did not make an adjustment, this failure to make an adjustment, if anything, goes to the weight of his testimony and not its competency." *Id.* at 309. This court further stated that "[w]hether a short term lease has to be considered is determined by whether it is significant, and then the failure to consider it properly only goes to the weight of the expert's testimony, not its competency." *Id.* at 310. In accordance with *Appeal of Cynwyd*, having considered the tax credits, Skolnik's failure to make an adjustment of his appraisal goes to the weight of his testimony not its competency.

■■■ Because Skolnik's testimony was competent, we are constrained to vacate the trial court's order and remand this case as it was improper to grant the motion for a directed verdict. In deciding a motion for directed verdict, the trial court must accept as true all facts and inferences which support contentions made by the party against whom

the motion is made and shall reject all testimony and references to the contrary. *Shedrick v. William Penn School District*, 654 A.2d 163 (Pa.Cmwlth.1995), *petition for allowance of appeal denied*, 542 Pa. 682, 668 A.2d 1142 (1995). This court's review of the trial court's grant of a directed verdict is limited to determining whether the court abused its discretion or committed an error of law which controlled the outcome of the case. *Id.* In this case, because there was competent testimony presented by Parkside it was an error to grant the motion for a directed verdict.

Accordingly, we vacate the order granting the directed verdict and remand this case to the trial court for further proceedings deemed necessary and a disposition on the merits. Finally, we note that our decision in this case does not preclude the trial court from rejecting Skolnik's testimony as not credible.

### ORDER

NOW, April 29, 1998, the order of the Court of Common Pleas of York County at No. 91–SU–04109–08, is vacated. The case is remanded to the trial court for a disposition on the merits.

Jurisdiction relinquished.