(10 P.3d 777)

No. 83,198

In the Matter of the Equalization Appeal of
OTTAWA HOUSING ASSOC., L.P.

Opinion filed
September 1, 2000.

*Benjamin J. Neill*, of Neill, Terrill & Embree, L.C., of Overland Park, for appellant.

*William M. Edwards*, assistant county attorney, and *Lawrence M. Wright*, county attorney, for appellee.

Before PIERRON, P.J., GERNON, J.,and RICHARD M. SMITH, District Judge, assigned.

GERNON, J.: The Ottawa Housing Association, L.P. (Ottawa Housing) appeals the district court's decision approving the Board of Tax Appeals' (BOTA) valuation of Ottawa Housing's low-income housing apartment complex.

Ottawa Housing owns a 72-unit apartment complex in Ottawa, Kansas. This complex was built under a contract with the federal government to provide low-income housing. The contract provides Ottawa Housing with tax credits, and, in return, Ottawa Housing is required to rent the apartments at a reduced rate to persons who earn less than 60% of the median income for Franklin County. This restriction limits the available pool of tenants to those who earn less than $15,372, with an hourly rate not to exceed $7.39. The contract requires the property to maintain the rent restrictions for 16 years. Ottawa Housing subsequently sold these tax credits and reduced its mortgage on the property. Although the property could be withdrawn from the government program, it would require the recapture of the tax credits.

For the 1997 tax year, Franklin County valued the apartment complex for ad valorem taxes at $1,538,000, using the income approach. The valuation was affirmed by a hearing officer, and Ottawa Housing appealed to BOTA, claiming that the valuation should be reduced because of the rent restrictions required by the low-income housing contract with the government. BOTA disagreed with Ottawa Housing's valuation because it failed to consider both the benefits and the burdens of the low-income housing contract.

Ottawa Housing then appealed BOTA's decision to the district court. The district court upheld BOTA's decision, and Ottawa Housing appeals.

When reviewing an agency's action, an appellate court's scope of review is limited to determining whether the district court reviewed the action in accordance with the Act for Judicial Review

and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* *Board of Douglas County Comm'rs v. Cashatt*, 23 Kan. App. 2d 532, 538, 933 P.2d 167 (1997).

K.S.A. 77-621(c) allows the court to grant relief from the agency action under certain circumstances, including when the agency erroneously interpreted or applied the law, when the agency's decision is not supported by substantial competent evidence in the record, or when the agency's action is unreasonable, arbitrary, or capricious. K.S.A. 77-621(c)(4),(7), and (8). The party who asserts that the agency's decision is invalid bears the burden of proving the invalidity. K.S.A. 77-621(a)(1).

On appeal, Ottawa Housing limited its arguments to the interpretation and application of K.S.A. 79-503a, arguing that BOTA should have considered the governmental restrictions that accompany its status as a low-income housing complex. This court has de novo review over the interpretation of a statute. *Rose & Nelson v. Frank*, 25 Kan. App. 2d 22, 24, 956 P.2d 729, *rev. denied* 265 Kan. 886 (1998).

K.S.A. 79-503a provides:

" 'Fair market value' means the amount in terms of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting for property in an open and competitive market, assuming that both parties are acting without undue compulsion. For the purposes of this definition it will be assumed that consummation of a sale occurs as of January 1.

"Sales in and of themselves shall not be the sole criteria of fair market value but shall be used in connection with cost, income and other factors including but not by way of exclusion:

(a) The proper classification of lands and improvements;

(b) the size thereof;

(c) the effect of location on value;

(d) depreciation, including physical deterioration or functional, economic or social obsolescence;

(e) cost of reproduction of improvements;

(f) **productivity**;

(g) earning capacity as indicated by lease price, by capitalization of net income or by absorption or sell-out period;

(h) **rental or reasonable rental values**;

(i) sale value on open market with due allowance to abnormal inflationary factors influencing such values;

**(j) restrictions imposed upon the use of real estate by local governing bodies, including zoning and planning boards or commissions; and**

(k) comparison with values of other property of known or recognized value. The assessment-sales ratio study shall not be used as an appraisal for appraisal purposes.

"The appraisal process utilized in the valuation of all real and tangible personal property for ad valorem tax purposes shall conform to generally accepted appraisal procedures which are adaptable to mass appraisal and consistent with the definition of fair market value unless otherwise specified by law." (Emphasis added.)

The county's appraiser admitted that he did not consider the rental restrictions on the Ottawa Housing property in his appraisal. Ottawa Housing argues that this admission clearly establishes that the appraisal was not in conformance with K.S.A. 79-503a(d) and (j).

Kansas has never determined whether the valuation of a low-income housing complex should include the effects of the governmental contract establishing it as low-income housing. Several other states, however, have addressed this issue. With the exception of cases from Ohio, all of the cases support the proposition that the taxing authority should consider the effects of the low-income housing contract when valuing the property for ad valorem taxes.

Accord:

• *Greenfield Village Apts. v. Ada County*, 130 Idaho 207, 210-11, 938 P.2d 1245 (1997) (holding that the property valuation should consider the restricted use of the land as low-income and rent restricted; a concurring opinion notes that the valuation should consider the benefits of the tax credits as well);

• *Kankakee Co. Board of Review v. PTAB*, 131 Ill. 2d 1, 17, 544 N.E.2d 762 (1989) (holding that the taxing authority must weigh both the positive and negative aspects of a subsidy agreement and adjust the income figure to accurately reflect the true earning capacity of the property);

• *Pedcor Investments v. State Bd.*, 715 N.E.2d 432, 437 (Ind. Tax 1999) (concluding that deed restrictions may constitute economic obsolescence depending on the effect of the tax incentives);

• *Glenridge Development v. City of Augusta*, 662 A.2d 928, 931 (Me. 1995) (concluding that the taxing authority should consider

the effect of the regulations governing the housing complex but refusing to find error because the valuation was based on the cost approach rather than the income approach);

• *Meadowlanes v. Holland*, 437 Mich. 473, 495, 473 N.W.2d 636 (1991) (holding that the interest subsidy payments made by the government in return for the rent restrictions affect the selling price of the property and should be considered in the property's valuation);

• *Rebelwood, Ltd. v. Hinds County*, 544 So. 2d 1356, 1364 (Miss. 1989) (holding that because the benefits of participating in a federal low-income housing program affect the value of the property in the open market, they must sensibly be considered in assessing the value);

• *Steele v. Town of Allenstown*, 124 N.H. 487, 491-92, 471 A.2d 1179 (1984) (holding that federally subsidized housing should be valued as such and not as non-subsidized housing);

• *Penns Grove Gardens v. Penns Grove*, 18 N. J. Tax 253, 264-65 (1999) (holding that the governmental contract rent and the actual management fee should be used in determining valuation);

• *Bayridge Assoc. Ltd. Partnership v. Dept. of Rev.*, 321 Or. 21, 31, 36, 892 P.2d 1002 (1995) (holding that participation in a § 42 housing program is a governmental restriction as to use and must be considered in valuing property, but a dissenting judge found the contract to be "nothing more than a financial arrangement, voluntarily chosen by the owner, for its own financial benefit");

• *Parkside Townhomes v. Board of Assess.*, 711 A.2d 607, 611 (Pa. Commw. 1998) (holding that the fair market value of property is a function of the economic reality which includes the effects of tax credits for low-income housing);

• *Alta Pacific v. Utah State Tax Com'n*, 931 P.2d 103, 115-16 (1997) (concluding that the commission should have considered the effects of the low-income housing contract but refusing to reverse because the taxpayer failed to show substantial prejudice);

• *Metro. Holding v. Milwaukee Review Bd.*, 173 Wis. 2d 626, 634, 495 N.W.2d 314 (1993) (holding that the property assessment for low-income housing should be based on actual rents and expenses).

But *cf.*:
- *Alliance Towers v. Bd. of Revision*, 37 Ohio St. 3d 16, 24, 523 N.E.2d 826 (1988) (holding that market rental rates should be used in valuing low-income housing and stating that the artificial effects of government housing assistance programs are not indicative of the valuation of real estate);
- *Canton Towers, Ltd. v. Bd. of Revision*, 3 Ohio St. 3d 4, 7, 9, 444 N.E.2d 1027 (1983) (holding that it was proper to use market rental rates in determining the value of a low-income housing complex, but two dissenting justices found that the effects of the low-income housing contract should have been considered).

These cases apply the general theory that a low-income housing contract is an investment tool for maximizing an investment in real estate. See *Penns Grove Gardens*, 18 N.J. Tax at 261-62; *Bayridge Assoc. Ltd. Partnership*, 321 Or. at 31; *Parkside Townhomes*, 711 A.2d at 611. Buyers and sellers of real estate consider these tools in determining the market value of real estate. See *Pedcor Investments*, 715 N.E.2d at 437; *Rebelwood, Ltd.*, 544 So. 2d at 1364. This principle corresponds with the Kansas definition of "fair market value" as "the amount in terms of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting for property in an open and competitive market, assuming that the parties are acting without undue compulsion." K.S.A. 79-503a.

The district court's decision is reversed, and this matter is remanded to BOTA for a determination of valuation consistent with this opinion.

We note that a recent ruling of BOTA supports our conclusion. See *In re Equalization Appeals of Prairie Commons Lawrence, LP*, Docket No. 1998-5876-EQ and 1999-6807-EQ.

Reversed and remanded.