## A01A1825. PINE POINTE HOUSING, L.P. v. LOWNDES COUNTY BOARD OF TAX ASSESSORS.

(561 SE2d 860)

MIKELL, Judge.

In 1996, Pine Pointe Housing, L.P. completed construction of a 71-unit rental housing project in Valdosta. Through an agreement with the Georgia Financing and Housing Authority, the property received an allocation of low-income housing tax credits under Section 42 of the Internal Revenue Code of 1986, as amended. Pine Pointe's limited partnership structure allows the tax credits to "flow through" to the benefit of its limited partners. As required by federal law, Pine Pointe agreed to rent the property to low-income tenants at below-market rates for 15 years and filed a restrictive covenant in the county deed records to that effect. The maximum credits available to the project were $448,120 per year for ten years.

On July 28, 1997, Pine Pointe appealed the 1997 ad valorem tax assessment on the property to the Lowndes County Board of Equalization. The Lowndes County Board of Tax Assessors then appealed the ruling of the board of equalization to the superior court, which held a de novo hearing on November 20, 2000. At issue was the fair market value of the property as of January 1, 1997, and, in particular, how to value the property given the rental restrictions and federal tax benefits applicable to the project. On November 30, 2000, the trial court issued its order establishing the fair market value of the property at $4,709,000.

In making its calculation of fair market value, the trial court found that (1) the restrictive covenants of record and binding upon the property must be considered in determining the fair market value of the property, (2) the mortgage equity or debt equity income approach to valuation is legal under Georgia law and applicable to the property, (3) the tax credits associated with the property cannot be sold, but run with the property, and (4) the tax credits are associated with the restrictive covenants and must be considered in determining the fair market value of the property. The value of $4,709,000 was supported by testimony of Henry Wise, an expert witness presented by Pine Pointe. Under his "mortgage equity" income approach, Wise valued the property at $4,800,000, taking into account the value of the tax credits, the mortgage, and project cash flow. The witness confirmed that $91,000 must be deducted from this figure to account for nontaxable personalty included in the project value.

In this appeal, Pine Pointe claims that the trial court erred in (1) using Section 42 income tax credits in determining fair market value, (2) denying its motion for a directed verdict because the Lowndes County Board of Tax Assessors failed to present a permissible

method for establishing fair market value, and (3) denying its motion to dismiss because the Board failed to ensure a timely hearing of its appeal to the superior court. We find no error and affirm.

1. Pine Pointe claims that the trial court erred in considering the Section 42 tax credits in calculating the property's fair market value. We disagree. In support of its claim, Pine Pointe argues that (1) the tax credits had, in economic if not technical effect, been sold, and thus had no value to Pine Pointe, (2) consideration of the tax credits is inconsistent with the Georgia appraisal procedures manual, (3) tax credits cannot be considered income for accounting purposes, (4) the trial court's ruling is inconsistent with principles established by the case law, and (5) OCGA § 48-5-2 (3) (B.1), effective as of July 1, 2001, prohibits consideration of the tax credits. "[T]he standard of review of a non-jury trial of disputed material facts is the clearly erroneous test under OCGA § 9-11-52[;] . . . the plain legal error standard of review applies, where the appellate court determines that the issue was of law, not fact. . . ."[1] With some exceptions, property is taxed at its fair market value.[2] For purposes of our review, we are guided throughout by the General Assembly's definition of fair market value: "the amount a knowledgeable buyer would pay for the property and a willing seller would accept for the property at an arm's length, bona fide sale."[3]

Under current law, a number of different factors must be considered in arriving at fair market value:

> The tax assessor shall consider the following criteria in determining the fair market value of real property: (i) Existing zoning of property; (ii) Existing use of property, including any restrictions or limitations on the use of property resulting from state or federal law or rules or regulations adopted pursuant to the authority of state or federal law; (iii) Existing covenants or restrictions in the deed dedicating the property to a particular use; and (iv) Any other factors deemed pertinent in arriving at fair market value.[4]

The taxing authorities are required to apply external factors, such as zoning and deed restrictions, in determining fair market value, including "[a]ny other factors deemed pertinent."[5] Evidence shows that the Section 42 tax credits were pertinent to the fair mar-

---

[1] *Glover v. Ware*, 236 Ga. App. 40, 45 (3) (510 SE2d 895) (1999).
[2] OCGA § 48-5-6.
[3] OCGA § 48-5-2 (3).
[4] OCGA § 48-5-2 (3) (B).
[5] OCGA § 48-5-2 (3) (B) (iv).

ket value of the property. The credits have value to a taxpayer with federal income tax liability and can be "passed through" a partnership structure to those taxpayers. Because Section 42 tax credits are generated by a designated property, a third party would pay for the value as part of that property's sale price in a bona fide, arm's length transaction. Furthermore, the tax credits go hand in hand with restrictive covenants that require the property to charge below-market rent. By statute,[6] these restrictions are required to be considered by the assessor. If viewed in isolation, the rental restrictions would artificially depress the value of the property for tax valuation purposes. The fair market value determined by the trial court is supported by an appraisal that takes into account both the value of the tax credits and the rental income from the property as reduced by the rental restrictions. Accordingly, we find that the trial court's calculation of fair market value was consistent with the law and the evidence. Although we will consider them in turn below, Pine Pointe's arguments to the contrary have no merit.

(a) Pine Pointe contends that the tax credits had, in practical if not legal effect, been sold, and so the tax credits had no value to Pine Pointe. Evidence shows that 99 percent of the tax credits were allocated by the partnership to its limited partner. Nevertheless, if a property eligible for Section 42 tax credits is sold, then the subsequent owner of the property is entitled to the future tax credits associated with the property.[7] Furthermore, the ownership structure of Pine Pointe is irrelevant to the value of the project to a third party.[8]

Pine Pointe also argues that the Section 42 tax credit does not necessarily follow the property because a new purchaser could choose not to comply with the rental restrictions, and thus lose the credit, and that while the tax credits are payable for ten years, the rental restrictions are in place for fifteen years. The rental restrictions associated with the tax credits were taken into account by the expert witnesses in arriving at a valuation amount. The argument with respect to future noncompliance by a purchaser of the property is groundless. As a matter of pure speculation, a future owner could choose to act in a way that would eliminate the credit, but it does not change the law that any tax credit generated is associated with the property[9] nor the evidence that an available tax credit has value to a third-party purchaser. Furthermore, the Internal Revenue Code has provisions which encourage a buyer and seller of property generating Section 42

---

[6] OCGA § 48-5-2 (3) (B) (iii).

[7] 26 USC § 42 (d) (7).

[8] See OCGA § 48-5-3 (liability of property for taxation shall not be affected by the individual or corporate character of the property owner).

[9] 26 USC § 42 (d) (7).

tax credits to ensure the property continues to be operated as a low-income rental project.[10]

(b) Pine Pointe further argues that considering Section 42 tax credits in property valuation would not comply with the Georgia Department of Revenue's appraisal procedures manual.[11] Regulations require county property appraisal staff to follow this manual.[12] The manual provides: "Real property does not include the intangible benefits associated with the ownership of real estate, such as the goodwill of a going business concern."[13] Nevertheless, the Section 42 tax credits are not the type of benefit associated with owning real estate, such as goodwill, that cannot be taken into account in determining the value of a property to a third party. Goodwill is a "favor which the management of a business wins from the public,"[14] and as such is more associated with a business operation than the property on which the business is located. Anticipated rental income associated with a property, although intangible in nature, may clearly be used in property valuation.[15] Section 42 tax credits provide a similar stream of value tied solely to the property.

Pine Pointe also argues that because the tax credits reduce income taxes, and because the manual provides that income taxes cannot be considered in using an income and expense analysis to value a property,[16] that it would be inconsistent with the manual to consider the tax credits. However, an owner's income tax liability is an expense not directly related to property ownership, unlike the tax credits, which are generated as to amount by the property itself independent of the owner.

(c) Pine Pointe contends that the tax credits are not "income," and therefore cannot be used in valuing a property under the income method. Tax credits are not mentioned in the components which may be used to compute value under applicable regulations.[17] The list, however, is not exclusive, and consideration of Section 42 tax credits is not forbidden.

(d) Citing *O'Quinn v. Ellis*[18] and certain decisions of foreign

---

[10] For instance, under 26 USC § 42 (j) (6) (B), if property which has accumulated Section 42 tax credits is sold, in order to keep the benefits of the previously accrued tax credits, the seller must post a bond with the Internal Revenue Service and be reasonably assured that the property continues to be operated as a qualifying low-income project by the new owner.

[11] Ga. Admin. Code Rule 560-11-10.

[12] Ga. Admin. Code Rule 560-11-10-.09 (1).

[13] Ga. Admin. Code Rule 560-11-10-.02 (1) (w).

[14] (Punctuation omitted.) *NAACP v. Overstreet*, 221 Ga. 16, 29 (4) (a) (142 SE2d 816) (1965).

[15] Ga. Admin. Code Rule 560-11-10-.09 (4) (c) (1) (i).

[16] Id.

[17] Id.

[18] 224 Ga. 328, 330 (161 SE2d 832) (1968).

courts, Pine Pointe further argues that precedential authority supports its position. In *O'Quinn* our Supreme Court held that although a tobacco allotment runs with the land, and a farm with a tobacco allotment was worth more than one without, that the allotment could not be considered in valuing a property for ad valorem tax purposes. The Supreme Court indicated that "[t]o authorize such a distinction would permit the value of property to be based upon the volume of business done on such land."[19] The Supreme Court also compares the tobacco allocation to an exclusive distributorship arrangement.[20] As so described by the Supreme Court, a tobacco allotment does not appear to be analogous to a Section 42 tax credit, the amount of which is not derived from business volume.[21]

We also noted in *Coastal Equities v. Chatham County Bd. of Tax Assessors*,[22] that "the Supreme Court [in *O'Quinn*] held that using a tobacco allotment as the only permissible distinguishing factor among otherwise comparable cultivated lands was a defective method of valuation when other possible distinguishing factors were ignored." Here, the tax credits are not viewed in isolation by the trial court, but along with the associated restrictions on the use of the land, in order to arrive at a fair market value which considers all applicable factors. Accordingly, we find *O'Quinn* is not so similar as to be controlling.

Foreign authority cited by Pine Pointe, including *Cascade Court Ltd. Partnership v. Noble*[23] and *Bayridge Assoc. Ltd. Partnership v. Dept. of Revenue*,[24] are not persuasive. *Cascade Court's* conclusion is based on the treatment of Section 42 tax credits as intangible personal property, a designation the court makes without supporting authority or analysis. The court in *Bayridge Assoc.* is primarily concerned with whether the Section 42 tax credit is a type of governmental restriction, defined by statute, which under Oregon law cannot be considered in determining market value. Other foreign courts have concluded that Section 42 tax credits should be considered in determining the fair market value of real property.[25]

The parties both rely on the United States Supreme Court's opinion in *Randall v. Loftsgaarden*.[26] The Court noted that federal

---

[19] Id. at 330 (2).

[20] Id.

[21] 26 USC § 42 (a) (2) provides the credit is calculated using the "qualified basis of each qualified low-income building."

[22] 201 Ga. App. 571, 572 (1) (a), n. 1 (411 SE2d 540) (1991).

[23] 105 Wn. App. 563, 571 (20 P3d 997) (2001).

[24] 321 Ore. 21 (892 P2d 1002) (1995).

[25] See *In re Ottawa Housing Assn.*, 27 Kan. App.2d 1008 (10 P3d 777) (2000); *Parkside Townhomes Assoc. v. Bd. of Assessment Appeals of York County*, 711 A2d 607, 611 (Pa. Commw. 1998).

[26] 478 U. S. 647 (106 SC 3143, 92 LE2d 525) (1986).

income tax credits have no value in and of themselves because they must be applied against a taxpayer's federal income tax liability, and that the receipt of federal income tax credits could not be considered income for purposes of the federal tax code. But that does not mean that the tax credits do not influence a property's fair market value, which is the issue here.

(e) Pine Pointe finally contends that a recent change in the law requires that we reverse. After the trial court rendered its decision, the General Assembly added subparagraph (3) (B.1) to OCGA § 48-5-2: "The tax assessor shall not consider any income tax credits with respect to real property which are claimed and granted pursuant to either Section 42 of the Internal Revenue Code of 1986, as amended, or Chapter 7 of this title in determining the fair market value of real property."

This statute is effective as of July 1, 2001, and does not provide for a retroactive effect. "A statute is never to be given a retroactive operation unless such construction is absolutely demanded."[27] Pine Pointe argues that the law is applicable to our review because it is the general rule that the appellate court shall apply the law as it exists at the time of its judgment, absent impairment of vested rights under the previous law.[28] As shown by our analysis, however, the consideration of Section 42 tax credits was previously warranted in valuing property for tax purposes, and so the addition of subparagraph (3) (B.1) is a substantive change in the law and cannot alter a tax liability which accrued four and a half years before its effective date.[29]

2. Pine Pointe claims that the trial court erred in denying its motion for directed verdict at the close of the Board's case. Pine Pointe claims the Board's expert witnesses did not use an authorized method to calculate the fair market value of the property. A motion for directed verdict should "be granted only when no conflict exists in the evidence and the evidence presented, with all reasonable inferences therefrom, demands a particular verdict."[30]

Witness Stevens used the discount cash flow method of valuation, which Pine Pointe argues applies only to leases. Witness Bajalia used a rent capitalization method that Pine Pointe contends required sample data from comparable properties, which was unavailable. Although Pine Pointe accepts some of the valuation models presented by witness Wise, it argues that Wise had not testified at the time the Board completed the presentation of its case and the motion for

---

[27] *J. Scott Rentals, Inc. v. Bryant*, 239 Ga. 585, 587 (238 SE2d 385) (1977).

[28] See *Pearson v. City of Atlanta*, 231 Ga. App. 96, 97 (2) (499 SE2d 89) (1998).

[29] See *Ross v. Lettice*, 134 Ga. 866, 868 (68 SE 734) (1910) (a statute is impermissibly retroactive if it impairs or destroys vested rights).

[30] *Crump v. McDonald*, 239 Ga. App. 647, 648 (1) (520 SE2d 283) (1999).

directed verdict was made. We find Pine Pointe's argument to be flawed, however, because the allowable methodology for conducting an appraisal is not as restrictive as Pine Pointe contends. Unusual circumstances must be considered[31] in determining fair market value, and all appraisals are subject to compliance with the statutory definition of fair market value.[32] Furthermore, although the appraiser's manual allows the discounted cash flow method to value a lease, it does not limit the approach to leases only.[33] Accordingly, the trial court did not err in denying Pine Pointe's motion for a directed verdict.

3. Lastly, Pine Pointe argues that the trial court erred when it denied its motion to dismiss the Board's appeal from the decision of the board of equalization. If an appeal is made from the ruling of the board of equalization to the superior court, the appeal must be heard "at the first term following the filing of the appeal unless continued by the court upon a showing of good cause."[34] The burden is on the appealing party to have the action tried at the first term, but a failure to do so is not fatal if a reasonable excuse or reasonable delay is shown.[35] The question of whether reasonable excuse or reasonable failure has been shown is a matter within the discretion of the trial court.[36]

The Board's appeal to the superior court was not heard at the first term of court following its filing, but was continued. Pine Pointe agreed to the continuances in correspondence with the trial court. Evidence also shows that during the term in question, Pine Pointe had not completed its response to the Board's discovery requests. The trial court denied Pine Pointe's motion to dismiss because it found a reasonable excuse why a hearing was not obtained during the first term of court following the filing of the appeal from the board of equalization, and there is some evidence to support the finding. We see no abuse of discretion, and the trial court's denial of Pine Pointe's motion to dismiss is affirmed.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED MARCH 12, 2002 —

*Coleman, Talley, Newbern, Kurrie, Preston & Holland, Thompson Kurrie, Jr., Edward F. Preston*, for appellant.

---

[31] Ga. Admin. Code Rule 560-11-10-.01 (2).

[32] OCGA § 48-5-2; Ga. Admin. Code Rule 560-11-10-.09 (4).

[33] Ga. Admin. Code Rule 560-11-10-.09 (4) (c) (2) (II) (v).

[34] OCGA § 48-5-311 (g) (4) (A).

[35] See *Spencer v. Lamar County Bd. of Tax Appeals*, 202 Ga. App. 742, 744 (2) (415 SE2d 332) (1992).

[36] *DeKalb County Bd. of Tax Assessors v. Stone Mountain Indus. Park*, 147 Ga. App. 503, 504 (249 SE2d 318) (1978).

*Elliott & Blackburn, Walter G. Elliott II*, for appellee.
*James F. Grubiak, Kelly J. Pridgen, Karen G. Thomas, Michael P. Ludwiczak*, amici curiae.