688 S.E.2d 300

**STONE BROOKE LIMITED PARTNERSHIP, Petitioner Below, Appellant,**

v.

Phyllis SISINNI, as Assessor of Brooke County, and Virgil T. Helton, West Virginia Tax Commissioner, Respondents Below, Appellees.

and

Heathermoor Limited Partnership, Petitioner Below, Appellant,

v.

Joseph Alongi, as Assessor of Hancock County, and Virgil T. Helton, West Virginia Tax Commissioner, Respondents Below, Appellees.

and

Pine Haven Limited Partnership; The Hamlets Limited Partnership; and The Parks Limited Partnership (Parkview LP), Petitioners Below, Appellees,

v.

The Honorable Ottie Adkins, Assessor of Cabell County, and The County Commission of Cabell County, Respondents Below, Appellants.

Nos. 34423, 34424, 34863.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 2, 2009.

Decided Sept. 24, 2009.

Amy M. Smith, Steptoe & Johnson PLLC, Clarksburg, WV, Karen E. Kahle, Steptoe & Johnson PLLC, Wheeling, WV, J.A. Curia, III, Steptoe & Johnson PLLC, Charleston, WV, for Appellants, Stone Brooke Limited Partnership and Heathermoor Limited Partnership.

William T. Watson, William T. Watson, L.C., Huntington, WV, for Appellants, Ottie Adkins, Assessor of Cabell County, and the Cabell County Commission.

Darrell V. McGraw, Jr., Attorney General, Katherine A. Schultz, Senior Deputy Attorney General, Charleston, WV, for Appellees, Phyllis Sisinni, as Assessor of Brooke County; Joseph Alongi, as Assessor of Hancock County; and Virgil T. Helton, West Virginia State Tax Commissioner.

Herschel H. Rose, III, Steven R. Broadwater, Rose Law Office, Charleston, WV, for Appellees, Pine Haven Limited Partnership; The Hamlets Limited Partnership; and The Parks Limited Partnership (Parkview LP).

DAVIS, Justice.

Two of the appellants herein and petitioners below, Stone Brooke Limited Partnership and Heathermoor Limited Partnership, appeal from orders entered January 28, 2008, by the Circuit Courts of Brooke and Hancock Counties. By those orders, the circuit courts upheld the respective Assessor's valuation, for ad valorem taxation purposes, of rent-restricted apartment buildings. The additional appellants herein and respondents below, the Honorable Ottie Adkins, Assessor of Cabell County, and the County Commission of Cabell County, appeal from an order entered November 12, 2008, by the Circuit Court of Cabell County. By that order, the circuit court did not uphold the Assessor's valuation, for ad valorem taxation purposes, of rent-restricted apartment buildings. The common issues raised by each of these three consolidated appeals concern the proper method of valuing real property participating in the Low Income Housing Tax Credit Program.

Upon a review of the parties' arguments, the records presented for appellate consideration, and the pertinent authorities, we conclude that certain errors were made by each of the circuit courts from which appeals have been taken in this case. Accordingly, we affirm, in part, that portion of the orders entered by the Brooke County Circuit Court, in Case Number 34423, and the Hancock County Circuit Court, in Case Number 34424, upholding the Assessors' selection of the cost approach as the most accurate method of appraising the Stone Brooke and Heathermoor properties. However, we reverse, in part, the orders entered by the Brooke County Circuit Court and the Hancock County Circuit Court insofar as they did not specifically address whether the Assessors had analyzed each factor required to be considered in the appraisal of commercial real property set forth in W. Va.C.S.R. §§ 110–1P–2.1.1 to 2.1.4 (1991), and we remand these cases for further proceedings to permit the circuit courts to review the correctness of the Assessors' valuations through the application of these criteria to the Stone Brooke and Heathermoor properties.

Furthermore, we reverse the order entered by the Circuit Court of Cabell County, in Case Number 34863, because (1) the Assessor presented substantial evidence to support his selection of the cost approach as the most accurate method of appraising the Pine Haven, The Hamlets, and The Parks properties and (2) the circuit court's order did not specifically address whether the Assessor had analyzed each factor required to be considered in the appraisal of commercial real property set forth in W. Va.C.S.R. §§ 110–1P–2.1.1 to 2.1.4 (1991). Accordingly, we remand this case for further proceedings to permit the circuit court to reinstate the Assessor's cost approach appraisals and to review the correctness of the Assessor's valuations through the application of these criteria to the Pine Haven, The Hamlets, and The Parks properties.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Each of the Taxpayers who is before the Court in this consolidated proceeding owns and operates multi-unit apartment buildings that participate in the Low Income Housing Tax Credit Program. Through this program, investors receive tax credits to facilitate the construction of low income residential rental housing, and, in exchange for such credits, the resulting apartments are rented to low income individuals at restricted rates that are substantially lower than the market rents charged for comparable, unrestricted apartments. *See generally* 26 U.S.C. § 42 (2004).

During the proceedings below, the circuit court appeals of Stone Brooke and Heathermoor were consolidated for hearing purposes, but the respective circuit courts each issued a final order to resolve the individual Taxpayer's appeals; accordingly, each of these appeals was assigned a different case number on appeal to this Court. By contrast, the circuit court appeals of Pine Haven, The Hamlets, and The Parks were consolidated for hearing and decisional purposes in the Circuit Court of Cabell County, and the court entered a single order resolving all of the Taxpayers' appeals; therefore, one case number was assigned to these consolidated cases on appeal to this Court.

### A. Case Number 34423—Stone Brooke

In Case Number 34423, the appellant herein and petitioner below, Stone Brooke Limited Partnership (hereinafter "Stone Brooke"), challenged its ad valorem property tax assessments for tax year 2006. The Assessor of Brooke County, Phyllis Sisinni (hereinafter "Brooke County Assessor"), used the cost approach[1] to value Stone Brooke's property at $1,784,100.00. After Stone Brooke challenged this assessment, the Brooke County Assessor asked the State Tax Commissioner (hereinafter "the Commissioner")[2] to value

---

1. Pursuant to W. Va.C.S.R. § 110–1P–2.2.1 (1991), three types of appraisal methods may be used when valuing commercial real property for ad valorem taxation purposes: the cost approach, the income approach, and the market

data approach. For further discussion of these three appraisal methods, see Section III. A., *infra.*

2. At the time the instant proceedings were filed in the circuit courts, Virgil T. Helton was the

the property. The Commissioner employed an income approach and valued Stone Brooke's property at $1,971,000.00; this valuation relied upon the actual, restricted rents charged by Stone Brooke, rather than the market, unrestricted rents, and includes the value of the Low Income Housing Tax Credits (hereinafter "LIHTC" or "tax credits") that were allocated to Stone Brooke's property. During proceedings before the Brooke County Board of Equalization and Review (hereinafter "Brooke County Board"), Stone Brooke offered its own appraiser's valuation of its property in the amount of $1,159,000.00; this calculation used Stone Brooke's actual, restricted rents and excluded the value of the tax credits. The Brooke County Board adopted the Assessor's valuation of $1,784,100.00, and Stone Brooke appealed this decision to the Circuit Court of Brooke County. By order entered January 28, 2008, the circuit court concluded that the assessing officer is vested with discretion to select the most accurate appraisal method and that the Brooke County Assessor had not abused her discretion in valuing Stone Brooke's property. Accordingly, the circuit court affirmed the Brooke County Board's decision. From this ruling, Stone Brooke appeals to this Court.

### B. Case Number 34424—Heathermoor

Similarly, in Case Number 34424, the appellant herein and petitioner below, Heathermoor Limited Partnership (hereinafter "Heathermoor"), challenged its ad valorem property tax assessments for tax year 2006. The Assessor of Hancock County, Joseph Alongi (hereinafter "Hancock County Assessor"), used the cost approach to value Heathermoor's property at $3,963,500.00. After Heathermoor challenged this assessment, the Hancock County Assessor asked the State Tax Commissioner[3] to value the property. The Commissioner employed an income approach and valued Heathermoor's property at $2,924,000.00; this valuation relied upon the actual, restricted rents charged by Heat-

hermoor, rather than the market, unrestricted rents, and includes the value of the tax credits that were allocated to Heathermoor's property. During proceedings before the Hancock County Board of Equalization and Review (hereinafter "Hancock County Board"), Heathermoor offered its own appraiser's valuation of its property in the amount of $1,276,000.00; this calculation used Heathermoor's actual, restricted rents and excluded the value of the tax credits. The Hancock County Board adopted the Assessor's valuation of $3,963,500.00, and Heathermoor appealed this decision to the Circuit Court of Hancock County. By order entered January 28, 2008, the circuit court concluded that the assessing officer is vested with discretion to select the most accurate appraisal method and that the Hancock County Assessor had not abused his discretion in valuing Heathermoor's property. Accordingly, the circuit court affirmed the Hancock County Board's decision. From this ruling, Heathermoor appeals to this Court.

### C. Case Number 34863—Pine Haven, The Hamlets, and The Parks

In Case Number 34863, the Taxpayers, Pine Haven Limited Partnership (hereinafter "Pine Haven"); The Hamlets Limited Partnership (hereinafter "The Hamlets"); and The Parks Limited Partnership (Parkview LP) (hereinafter "The Parks"), are the appellees herein and petitioners below. Each of these Taxpayers challenged its ad valorem property tax assessments for tax year 2008. The Assessor of Cabell County, Ottie Adkins, (hereinafter "Cabell County Assessor") used the cost approach, and checked his calculations using the income approach, to value the Taxpayers' properties: Pine Haven's property was valued at $2,017,-00.00; The Hamlets' property was valued at $3,015,000.00; and the Parks' property was valued at $2,952,100.00. The Taxpayers challenged these assessments, but, unlike in the Stone Brooke and Heathermoor cases,

State Tax Commissioner for West Virginia. During the pendency of these proceedings, however, on October 16, 2007, Governor Joe Manchin, III, appointed Christopher G. Morris as the State Tax Commissioner. To maintain consistency throughout these proceedings, we will refer to the State Tax Commissioner as "the Commissioner," without reference to a specific, named individual, except where the context requires otherwise.

**3.** *See supra* note 2.

the Cabell County Assessor did not request a valuation by the Commissioner. On appeal to the Cabell County Board of Equalization and Review · (hereinafter "Cabell County Board"), the Cabell County ·Assessor explained that he had checked his cost approach calculations by also computing the properties' values using the income approach;[4] however, the Assessor testified that he had not chosen the income approach valuations for appraisal purposes because those valuations were significantly greater than the valuations he obtained using the cost approach. The Taxpayers' appraiser utilized the income approach, excluding the tax credits allocated to the properties and utilizing the properties' actual, restricted rents; these valuations were $500,000.00 for Pine Haven; $900,000.00 for The Hamlets; and $750,000.00 for The Parks. Ultimately, the Cabell County Board adopted the Cabell County Assessor's property valuations for Pine Haven ($2,017,000.00); The Hamlets ($3,015,000.00); and The Parks ($2,952,100.00).

Pine Haven, The Hamlets, and The Parks appealed these decisions to the Circuit Court of Cabell County at which juncture their separate appeals were consolidated. By order entered November 12, 2008, the circuit court reversed the Cabell County Board's decisions and adopted the Taxpayers' appraiser's valuations of their properties, valuing Pine Haven at $500,000.00; The Hamlets at $900,000.00; and the Parks at $750,000.00; these valuations used the properties' actual, restricted rents and did not include the value of their allocated tax credits. In so ruling, the circuit court recognized the broad discretion afforded to an Assessor in valuing property for ad valorem taxation purposes, but also observed that "the Assessor has a duty to prove that his appraisals are correct when presented with evidence to the contrary. *In re Tax Assessments Against Pocahontas Land Co.*, 172 W.Va. 53 at 61, 303 S.E.2d 691 at 699 (1983)." Because the Cabell County Assessor had not explained how he had accounted for the properties' tax credits in his cost approach calculations, the circuit court

determined that the Assessor had not sustained his burden of proving the correctness of his appraisals by "substantial evidence." *Citing Killen v. Logan County Comm'n,* 170 W.Va. 602, 295 S.E.2d 689 (1982), *overruled on other grounds by In re Tax Assessment of Foster Found.'s Woodlands Ret. Cmty.*, 223 W.Va. 14, 672 S.E.2d 150 (2008). From this ruling, the Cabell County Commission, which sat as the Board of Equalization and Review, and the Cabell County Assessor appeal to this Court.

## II.

### STANDARD OF REVIEW

On appeal to this Court, the appellants seek a determination as to the proper method of valuing LIHTC property for ad valorem taxation purposes. We previously have held that

" ' "[a]n assessment made by a board of review and equalization and approved by the circuit court will not be reversed when supported by substantial evidence unless plainly wrong." Syl. pt. 1, *West Penn Power Co. v. Board of Review and Equalization [of Brooke County ]*, 112 W.Va. 442, 164 S.E. 862 (1932).' Syl. pt. 3, *Western Pocahontas Properties, Ltd. v. County Comm'n of Wetzel County*, 189 W.Va. 322, 431 S.E.2d 661 (1993)." Syl. pt. 4, *In re Petition of Maple Meadow Mining Co. for Relief from Real Property Assessment For the Tax Year 1992*, 191 W.Va. 519, 446 S.E.2d 912 (1994).

Syl. pt. 3, *In re Tax Assessment of Foster Found.'s Woodlands Ret. Cmty.*, 223 W.Va. 14, 672 S.E.2d 150 (2008). Stated otherwise,

[i]n a case involving the assessment of property for taxation purposes, which does not involve the violation of a statute governing the assessment of property, or a violation of a constitutional provision, or in which a question of the constitutionality of a statute is not involved, this Court will not set aside or disturb an assessment made by an assessor or the county court, acting

---

4. However, it is unclear whether the Cabell County Assessor, in performing an income analysis of the properties' valuations, used the proper-

ties' actual, restricted rents and/or whether he included in his calculations the tax credits that had been allocated to said properties.

as a board of equalization and review, where the assessment is supported by substantial evidence.

Syl. pt. 2, *In re Tax Assessments Against the S. Land Co.*, 143 W.Va. 152, 100 S.E.2d 555 (1957), *overruled on other grounds by In re the Assessment of Shares of Stock of the Kanawha Valley Bank*, 144 W.Va. 346, 109 S.E.2d 649 (1959). *But see In re Tax Assessment Against Amn. Bituminous Power Partners, L.P.*, 208 W.Va. 250, 255, 539 S.E.2d 757, 762 (2000) ("[J]udicial review of a decision of a board of equalization and review regarding a challenged tax-assessment valuation is limited to roughly the same scope permitted under the West Virginia Administrative Procedures Act, W. Va. Code ch. 29A. In such circumstances, a circuit court is primarily discharging an appellate function little different from that undertaken by this Court; consequently, our review of a circuit court's ruling in proceedings under [W. Va. Code] § 11–3–25 is *de novo*." (footnote and citation omitted)). In keeping with this standard, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

In the instant consolidated appeal, the Court is asked to resolve a split of authority among the circuit courts of this State regarding the proper method of valuing property that participates in the LIHTC program. To date, six West Virginia circuit courts have considered this issue: Brooke, Cabell, Fayette, Hancock, Jefferson, and Ohio. *See Stone Brooke Limited Partnership v. Sisinni*, No. 06–P–5, 2008 WL 6934475 (Brooke County, W. Va., Cir. Ct. Jan. 28, 2008) (on appeal to this Court in case *sub judice* ); *Pine Haven Limited Partnership v. Adkins*, Nos. 08–C–223, 08–C–224, & 08–C–225, 2008 WL 6934476 (Cabell County, W. Va., Cir. Ct. Nov. 12, 2008) (on appeal to this Court in case *sub judice* ); *In re: 1994 Property Tax Assessment of Twin Oaks Plaza*, No. 94–C–78 (Fayette County, W. Va., Cir. Ct. Feb. 8, 1999); *Heathermoor Limited Partnership v. Alongi*, No. 06–AA–2, 2008 WL 6934474 (Hancock County, W. Va., Cir. Ct. Jan. 28, 2008) (on appeal to this Court in case *sub*

*judice* ); *Shepherds Glen Limited Partnership v. Bordier*, No. 03–C–71 (Jefferson County, W. Va., Cir. Ct. Sept. 22, 2003); *Providence Green LLC v. Assessor, et al.*, Nos. 07–CAP–7 & 08–CAP–14 (Ohio County, W.Va., Cir. Ct. Apr. 22, 2008). Among the three methods of property valuation set forth in W. Va.C.S.R. § 110–1P–2.2.1 (1991), no courts have advocated the use of the market data approach. As for the other two methodologies, three circuit courts have upheld tax assessments based upon appraisals made pursuant to the cost approach, *i.e.*, Brooke, Hancock, and Jefferson, while the remaining three circuit courts have found the income approach to more accurately reflect the value of the subject properties, *i.e.*, Cabell, Fayette, and Ohio. In resolving this split of authority, we will first address the question of which appraisal method should be used when valuing LIHTC properties. Then, we will consider whether the aforementioned tax credits and restricted rents should be used in calculating such properties' value.

### A. *Choice of Appraisal Method*

The primary issue presented by this appeal is the question of which appraisal method should be used to value LIHTC property for ad valorem taxation purposes. As will be discussed more fully below, the Tax Commissioner has classified apartment buildings, such as those properties at issue herein, as "commercial property." *See* W. Va.C.S.R. § 110–1P–2.3.3 (1991) (" 'Commercial property' means income producing real property used primarily but not exclusively for the sale of goods or services, including but not limited to offices, warehouses, retail stores, *apartment buildings,* restaurants and motels." (emphasis added)). The Commissioner further has directed that appraisals of commercial real property for ad valorem taxation purposes be calculated using three appraisal methods: the cost approach, the income approach, and the market data approach. *See* W. Va.C.S.R. § 110–1P–2.2.1 (1991).

At issue in these consolidated cases is the question of which one of these three methodologies should be used to value properties that participate in the LIHTC Program. As for the Stone Brooke and Heathermoor properties, the Brooke County Circuit Court and

the Hancock County Circuit Court both upheld the Assessors' use of the cost approach to value said properties. With respect to Pine Haven, The Hamlets, and The Parks properties, the Cabell County Circuit Court determined that the Assessor had not presented substantial evidence to support his cost approach valuations and, thus, adopted instead the Taxpayers' income approach valuations of the subject properties.

Before this Court, all of the Taxpayers argue that LIHTC properties should be valued using the income approach as that method most accurately determines the true and actual value of LIHTC properties insofar as the special characteristics of LIHTC properties can more easily be taken into account, *i.e.,* the properties' restricted rents and the LIHTC tax credits allocated thereto. In support of their position, the Taxpayers cite authority from other jurisdictions that have preferred the income method for valuing property that participates in the LIHTC program. *See, e.g., Deerfield 95 Investor Assocs., LLC v. Town of East Lyme,* 25 Conn. L. Rptr. 51 (Super.Ct.1999) (mem. dec.); *Huron Ridge, LP v. Ypsilanti Township,* 275 Mich.App. 23, 737 N.W.2d 187 (2007); *In re Weaver Inv. Co.,* 165 N.C.App. 198, 598 S.E.2d 591 (2004); *1198 Butler St. Assocs. v. Board of Assessment Appeals,* 946 A.2d 1131 (Pa.Commw.Ct.2008); *Town Square Ltd.*

*P'ship v. Clay County Bd. of Equalization,* 2005 SD 99, 704 N.W.2d 896 (2005); *Spring Hill, L.P. v. Tennessee State Bd. of Equalization,* No. M2001–02683–COA–R3–CV, 2003 WL 23099679 (Tenn.Ct.App. Dec. 31, 2003); *State Hous. Auth. v. Town of Northfield,* 182 Vt. 90, 933 A.2d 700 (2007); *Cascade Court Ltd. P'ship v. Noble,* 105 Wash.App. 563, 20 P.3d 997 (2001); *Metropolitan Holding Co. v. Board of Review,* 173 Wis.2d 626, 495 N.W.2d 314 (1993).

By contrast, the Tax Commissioner and the Assessors suggest that no one particular method of valuing property can be selected and applied to the valuations of every parcel of LIHTC property and that the better course is to permit the assessing officer to retain the discretion to select the method that would produce the most accurate valuation in a given case as such discretion has been vested in the assessing officer by the Legislature and upheld by this Court. Additionally, the Commissioner and the Assessors acknowledge that, in 2008, the West Virginia Legislature attempted to mandate that the income approach be used to value LIHTC property. To this end, the Legislature passed Senate Bill 696 that would have required LIHTC property to be valued under the income method;[5] however, Governor Joe Manchin, III, vetoed this Bill due to its difficult application,[6] and the Legislature did not

---

**5.** The substantive text of Enrolled Senate Bill No. 696, which was passed on March 7, 2008, and would have been effective ninety days from passage had it not been vetoed by Governor Joe Manchin, III, provided:

*Be it enacted by the Legislature of West Virginia:* That the Code of West Virginia, 1931, as amended, be amended by adding thereto a new section, designated § 11–3–1c, to read as follows:

**ARTICLE 3. ASSESSMENTS GENERALLY. § 11–3–1c. Method of appraising affordable multifamily rental housing property.**

In determining the true and actual value of improved real property containing four or more residential units operated, in whole or in part, as affordable rental housing in accordance with the provisions of Sections 42 and 142(d), Title 26 of the United States Code and Sections 221(d)(3), 236, 241(f) or 983, Title 24 of the Code of Federal Regulations, for ad valorem property tax purposes, the assessor shall use the income method and, in doing so, shall take into account: (1) The rents and the impact of rent restrictions applicable to the

property; (2) the expenses, including the impact of any extraordinary expenses, associated with the operation of the property; and (3) the impact of restrictions on transfer of title and other restraints on alienation of the property: *Provided,* That federal or state income tax credits allowed with respect to such property shall not be treated as a part of the property or as income attributable to it. For real property as to which only a portion of the individual housing units are operated as affordable rental housing, as defined in Section 42 of the Internal Revenue Code of 1986, as amended, only that portion of the property is subject to the requirements of this section.

(Emphasis in original).

**6.** In his letter to Secretary of State Betty Ireland, dated March 31, 2008, Governor Joe Manchin, III, explained the reasons for his veto of Enrolled Senate Bill No. 696 as follows:

Pursuant to the provisions of Section 14, Article VII of the Constitution of West Virginia, I hereby disapprove and return Enrolled Senate Bill No. 696. Enrolled Senate Bill No. 696

reintroduce legislation in 2009 to correct these problems. Accordingly, the Commissioner and the Assessors state that there is no definite statement of legislative intent in this State to suggest that the income method is the preferred method of valuing LIHTC property.

 When valuing property for ad valorem taxation purposes, the property is to be valued at its true and actual value. In other words,

> [t]ax assessments of property are required to be proportionate to the property's value: "[A]ll property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law." W. Va. Const. art. X, § 1. W. Va.Code § 11–3–1 (1977) (Repl. Vol. 2008) further instructs that "[a]ll property shall be assessed annually ... at its true and actual value." We have interpreted the term "value" with respect to tax assessments as meaning " 'worth in money' of a piece of property-its market value." Syl. pt. 3, in part, *Killen v. Logan County Comm'n*, 170 W.Va. 602, 295 S.E.2d 689 [ (1982) ][, *overruled on other grounds by In re Tax Assessment of Foster Found.'s Woodlands Ret. Cmty.*, 223 W.Va. 14, 672 S.E.2d 150 (2008) ]. Furthermore, we have held that "[t]he price paid for property in an arm's length transaction, while not conclusive, is relevant evidence of its true and actual value." Syl. pt. 2, in part, *Kline v. McCloud*, 174 W.Va. 369, 326 S.E.2d 715 (1984).

*In re Tax Assessment of Foster Found.'s Woodlands Ret. Cmty.*, 223 W.Va. 14, 33, 672 S.E.2d 150, 169 (2008).

 Furthermore, "[i]n all cases, it is incumbent upon the circuit court, as it is upon the county commission and the assessor, to set the assessed value of all parcels of land at the amount established by the State Tax Commissioner. W. Va.Code § 18–9A–11." Syl. pt. 5, *Tug Valley Recovery Ctr., Inc. v. Mingo County Comm'n*, 164 W.Va. 94, 261 S.E.2d 165 (1979). Additionally,

> Title 110, Series 1P of the West Virginia Code of State Rules confers upon the State Tax Commissioner discretion in choosing and applying the most accurate method of appraising commercial and industrial properties. The exercise of such discretion will not be disturbed upon judicial review absent a showing of abuse of discretion.

Syl. pt. 5, *In re Tax Assessment Against Amn. Bituminous Power Partners, L.P.*, 208 W.Va. 250, 539 S.E.2d 757 (2000).

With respect to the valuation of commercial real property such as the apartment buildings owned by the Taxpayers herein, the Tax Commissioner has determined that three different types of appraisal methods may be used.

Generally accepted appraisal methods used to establish the value of industrial and commercial real properties.

In determining an estimate of fair market value, the Tax Commissioner will consider and use where applicable, three (3) generally accepted approaches to value: (A) cost,[7] (B) income,[8] and (C) market data.[9]

---

requires that "affordable rental housing," as defined by applicable federal regulations, be appraised using the "income method" of property appraisal for purposes of calculating ad valorem property taxes. Currently, county assessors consider income potential as part of the valuation process, but also consider the replacement cost of the property and the market price for similar properties.

Unfortunately, the bill fails to adequately detail several important concepts and to define several important terms. Most notably, the bill does not explicitly address how a property for which only a portion of which is dedicated to "affordable rental housing" is to be valued. Although the bill suggests that only those portions of the property so dedicated should be valued under the "income method", the bill fails to provide sufficient guidance to assessors

in applying this new rule—particularly in light of the turnover in rental housing units, which could alter the makeup of an individual piece of property several times over the course of a single tax year. As a result, these new provisions would be exceedingly difficult for county assessors to administer and enforce on a consistent basis.

For these reasons, I must veto this legislation.

7. W. Va.C.S.R. § 110–1P–2.2.1.1 (1991) explains the "cost approach" as follows:

Cost approach.—To determine fair market value under this approach, replacement cost of the improvements is reduced by the amount of accrued depreciation and added to an estimated land value. In applying the cost approach,

. . . .

Correlation.—Once generated, the various estimates of value may be considered in determining a final value estimate. . . .

When possible, the most accurate form of appraisal should be used, but because of the difficulty in obtaining necessary data from the taxpayer, or due to the lack of comparable commercial and/or industrial properties, choice between the alternative appraisal methods may be limited.

W. Va.C.S.R. §§ 110–1P–2.2, 110–1P–2.2.1, & 110–1P–2.2.2 (1991) (footnotes added). Thus, the Tax Commissioner has permitted an assessor to select any one of these three methods by which to value commercial real property for ad valorem taxation purposes, with a preference not for any one particular method but only for "the most accurate form of appraisal." W. Va.C.S.R. § 110–1P–2.2.2.

Although the Taxpayers have urged this Court to adopt the income approach as the only method by which LIHTC properties may be appraised, we are rather reluctant to do so in light of the Tax Commissioner's discretion to "choos[e] and apply[ ] the most accurate method of appraising commercial . . . properties." Syl. pt. 5, in part, *American Bituminous Power Partners*, 208 W.Va. 250, 539 S.E.2d 757. Our reluctance to select a preferred appraisal method is threefold. First, the Taxpayers have not demonstrated that the Tax Commissioner has abused his discretion in adopting a regulation that permits an assessing officer to consider the circumstances of a particular case and, based upon such considerations, to select the "most accurate form of appraisal." W. Va.C.S.R. § 110–1P–2.2.2.

Second, it is irresponsible and unrealistic for this Court to select a preferred appraisal

method and then to require that that solitary appraisal method be used to appraise every parcel of LIHTC property. Not only would such action by this Court usurp the Tax Commissioner's discretion when no abuse thereof has been shown, but a unitary appraisal method would not be appropriate in those cases in which the data for the application of the preferred method is not available. For example, in the case of *Shepherds Glen Limited Partnership v. Bordier*, No. 03–C–71 (Jefferson County, W. Va., Cir. Ct. Sept. 22, 2003), from the Circuit Court of Jefferson County, the court considered which appraisal method should be applied to value the LIHTC property at issue therein. The court, in upholding the Assessor's use of the cost and market data approaches, specifically rejected the taxpayer's request to apply the income method in that case because the taxpayer's " 'economic rent' data [wa]s not available to the assessor" and because "nowhere in the Code of West Virginia or the applicable rules are taxpayers required to furnish to assessors rental data." *Id.* at ¶¶ 15 & 16. *See also Bayer MaterialScience, LLC v. State Tax Comm'r*, 223 W.Va. 38, 54, 672 S.E.2d 174, 190 (2008) (per curiam) (rejecting taxpayers' request to apply particular appraisal method where taxpayers had not provided data necessary to apply that appraisal method because taxpayers' corporate financial structure did not produce that type of data). Therefore, while the Taxpayers herein have urged this Court to adopt the income approach as the sole method by which to value LIHTC properties, they have not appreciated that such properties will not be able to be valued at all if the LIHTC property's income data is not available.

Lastly, we hesitate to usurp the discretion afforded to the Tax Commissioner to

the Tax Commissioner will consider three (3) types of depreciation: physical deterioration, functional obsolescence, and economic obsolescence.

8. The "income approach" is set forth in W. Va. C.S.R. § 110–1P–2.2.1.2 (1991) as follows:
 Income approach.—A property's present worth is directly related to its ability to produce an income over the life of the property. The selection of an overall capitalization rate will be derived from current available market

data by dividing annual net income by the current selling price of comparable properties. The present fair market value of the property shall then be determined by dividing the annual economic rent by the capitalization rate.

9. W. Va.C.S.R. § 110–1P–2.2.1.3 (1991) explains the "market data approach" as follows: "Market data approach.—The market data approach will be applied by considering the selling prices of comparable properties."

"choos[e] and apply[ ] the most accurate method of appraising commercial ... properties," Syl. pt. 5, in part, *American Bituminous Power Partners,* 208 W.Va. 250, 539 S.E.2d 757, when there has not been a clear and definite statement of Legislative intent to override such discretion with respect to the valuation of LIHTC properties. Although the Legislature passed legislation that would have required the use of the income approach for the valuation of LIHTC properties, the Governor vetoed this legislation, and the Legislature has not attempted to address the Governor's concerns. Accordingly, because "[t]he Legislature, when it enacts legislation, is presumed to know of its prior enactments," Syllabus point 12, *Vest v. Cobb,* 138 W.Va. 660, 76 S.E.2d 885 (1953), it may conversely be presumed that when the Legislature fails to re-enact vetoed legislation, it tacitly approves of the status quo. Thus, it may be inferred, in the cases *sub judice,* that the Legislature, by failing to reintroduce its vetoed legislation, approves of the present method of assessing LIHTC, as well as all commercial, properties by deferring to the assessing officer to select the most accurate appraisal method.

 Having concluded, then, that the Tax Commissioner has afforded discretion to the assessing officer to select the most accurate appraisal method for the commercial property under consideration, we must consider whether the Assessors properly valued the LIHTC properties at issue herein. Once an assessor has selected an appraisal method and applied it to appraise a parcel of commercial real property,

> the valuation placed upon the property by the assessor is accorded great deference and is presumed to be correct. "As a general rule, there is a presumption that valuations for taxation purposes fixed by an assessor are correct.... The burden is on the taxpayer challenging the assessment to demonstrate by clear and convincing evidence that the tax assessment is erroneous." Syl. pt. 2, in part, *Western Pocahontas Props., Ltd. v. County Comm'n of Wetzel County,* 189 W.Va. 322, 431 S.E.2d 661. *Accord* Syl. pt. 7, *In re Tax Assessments Against Pocahontas*

*Land Co.,* 172 W.Va. 53, 303 S.E.2d 691 ("It is a general rule that valuations for taxation purposes fixed by an assessing officer are presumed to be correct. The burden of showing an assessment to be erroneous is, of course, upon the taxpayer, and proof of such fact must be clear."). *Cf.* Syl. pt. 2, *In re Tax Assessments Against the S. Land Co.,* 143 W.Va. 152, 100 S.E.2d 555 (1957) ("In a case involving the assessment of property for taxation purposes, which does not involve the violation of a statute governing the assessment of property, or a violation of a constitutional provision, or in which a question of the constitutionality of a statute is not involved, this Court will not set aside or disturb an assessment made by an assessor or the county court, acting as a board of equalization and review, where the assessment is supported by substantial evidence."), *overruled on other grounds by In re the Assessment of Shares of Stock of the Kanawha Valley Bank,* 144 W.Va. 346, 109 S.E.2d 649 (1959).

*Foster Found.,* 223 W. Va. at 33–34, 672 S.E.2d at 169–70.

 To overturn the Assessors' appraisals of the LIHTC properties at issue herein, the Taxpayers must prove by clear and convincing evidence that the assessments resulting from such appraisals were wrong: "A taxpayer challenging an assessor's tax assessment must prove by clear and convincing evidence that such tax assessment is erroneous." Syl. pt. 5, in part, *Foster Found.,* 223 W.Va. 14, 672 S.E.2d 150. From the records of the underlying proceedings, it is clear that the Assessors' appraisals, all of which were conducted pursuant to the cost approach, were supported by substantial evidence and, thus, that the ad valorem tax assessments based upon such appraisals were not plainly wrong. *See* Syl. pt. 3, *Foster Found.,* 223 W.Va. 14, 672 S.E.2d 150 (" ' " "An assessment made by a board of review and equalization and approved by the circuit court will not be reversed when supported by substantial evidence unless plainly wrong.' Syl. pt. 1, *West Penn Power Co. v. Board of Review and Equalization [of Brooke County],* 112 W.Va. 442, 164 S.E. 862

(1932)." Syl. pt. 3, *Western Pocahontas Properties, Ltd. v. County Comm'n of Wetzel County,* 189 W.Va. 322, 431 S.E.2d 661 (1993).' Syl. pt. 4, *In re Petition of Maple Meadow Mining Co. for Relief from Real Property Assessment For the Tax Year 1992,* 191 W.Va. 519, 446 S.E.2d 912 (1994).").

**1. Case Number 34423–Stone Brooke.** In the proceedings before the Circuit Court of Brooke County, the Assessor appraised the Stone Brooke property using the cost approach and obtained a value of $1,784,100.00. Upon a challenge by the Taxpayer, the Assessor consulted the State Tax Commissioner who, using the income approach, calculated a value of $1,971,000.00 for the Stone Brooke property. Rather than automatically adopting the higher appraised value suggested by the Tax Commissioner, the Assessor remained firm in her belief that the cost approach represented the more accurate method by which to appraise the subject property. In its order of January 28, 2008, the circuit court recognized that (1) W. Va.C.S.R. § 110–1P–2.2.1 vests assessing officers with the discretion to select the most accurate method of appraisal; (2) the regulations do not "state[ ] that one approach should be utilized to the exclusion of the others in valuing property that is utilized in the LIHTC program"; and (3) the Assessor in this case provided substantial evidence to support her appraisal pursuant to the cost approach. In this regard, the Assessor explained that "the cost method is appropriate because the [Stone Brooke] building was recently built, therefore, the cost method would be the most accurate assessment of true and actual value." Because the appraisal of the Stone Brooke property rendered by the Brooke County Assessor is supported by substantial evidence, Syl. pt. 3, in part, *Foster Foundation,* 223 W.Va. 14, 672 S.E.2d 150, and the Taxpayers have not demonstrated by clear and convincing evidence that such appraisal is erroneous, Syl. pt. 5, in part, *Foster Foundation,* 223 W.Va. 14, 672 S.E.2d 150, we find that the circuit court's decision upholding such appraisal is not plainly wrong. Accordingly, we affirm that portion of the Brooke County Circuit Court's January 28, 2008, order upholding the Assessor's appraisal of the Stone Brooke property pursuant to the cost approach.

**2. Case Number 34424—Heathermoor.** Likewise, in the proceedings before the Circuit Court of Hancock County, the Assessor appraised the Heathermoor property using the cost approach and obtained a value of $3,963,500.00. Upon a challenge by the Taxpayer, the Assessor consulted the State Tax Commissioner who, using the income approach, calculated a value of $2,924,000.00 for the Heathermoor property. Rather than automatically adopting the appraised value suggested by the Tax Commissioner, the Assessor remained firm in his belief that the cost approach represented the more accurate method by which to appraise the subject property. In its order of January 28, 2008, the circuit court recognized that (1) W. Va. C.S.R. § 110–1P–2.2.1 vests assessing officers with the discretion to select the most accurate method of appraisal; (2) the regulations do not "state[ ] that one approach should be utilized to the exclusion of the others in valuing property that is utilized in the LIHTC program"; and (3) the Assessor in this case provided substantial evidence to support his appraisal pursuant to the cost approach. In this regard, the Assessor explained that "the cost method is appropriate because the [Heathermoor] building was recently built, therefore, the cost method would be the most accurate assessment of true and actual value." Because the appraisal of the Heathermoor property rendered by the Hancock County Assessor is supported by substantial evidence, Syl. pt. 3, in part, *Foster Foundation,* 223 W.Va. 14, 672 S.E.2d 150, and the Taxpayers have not demonstrated by clear and convincing evidence that such appraisal is erroneous, Syl. pt. 5, in part, *Foster Foundation,* 223 W.Va. 14, 672 S.E.2d 150, we find that the circuit court's decision upholding such appraisal is not plainly wrong. Accordingly, we affirm that portion of the Hancock County Circuit Court's January 28, 2008, order upholding the Assessor's appraisal of the Heathermoor property pursuant to the cost approach.

**3. Case Number 34863—Pine Haven, The Hamlets, and The Parks.** Lastly, in the proceedings before the Circuit Court of

Cabell County, the Assessor appraised the properties using the cost approach, checked his calculations with the income approach, and obtained appraised values of $2,017,000.00 for Pine Haven; $3,015,000.00 for The Hamlets; and $2,952,100.00 for The Parks. Unlike the Brooke and Hancock County Assessors, though, the Cabell County Assessor did not consult the State Tax Commissioner when the Taxpayers challenged his appraisals. In its order of November 12, 2008, the Circuit Court of Cabell County did not uphold the Assessor's appraisals because it concluded that the Assessor had not produced substantial evidence to support his appraisals. The circuit court also did not appreciate either the discretion afforded to assessing officers by W. Va.C.S.R. § 110–1P–2.2.1 to select among three appraisal methods for commercial real property or the fact that these regulations do not specify the use of any particular method by which to appraise LIHTC properties. In support of his use of the cost approach, the Assessor indicated that although he had based his calculations upon the cost approach, he also had considered the income approach based upon "the market rents in the area," commenting that "[h]ow the[ ] [Taxpayers] finance [their properties] is not really our concern. It's the value of the buildings" that is being appraised.

Thus, while the circuit court may have gleaned from the Taxpayers' expert evidence that the income approach is the preferred method of appraisal, the Assessor nevertheless presented substantial evidence to support his use of the cost approach. *See* Syl. pt. 3, in part, *Foster Found.*, 223 W.Va. 14, 672 S.E.2d 150. Moreover, given the Assessor's discretion to select the most accurate method of appraisal, W. Va.C.S.R. § 110–1P–2.2.2, and the lack of a statutory or regulatory requirement to prefer the income approach when valuing LIHTC properties, the Taxpayers have not proven by clear and convincing evidence that the Assessor's appraisals pursuant to the cost approach were erroneous. Syl. pt. 5, in part, *Foster Found.*, 223 W.Va. 14, 672 S.E.2d 150. Therefore, the circuit court's order adopting the Taxpayers' appraisals is plainly wrong because the Assessor's appraisals should have been upheld. Therefore, we reverse that portion of the Cabell County Circuit Court's November 12, 2008, order adopting the Taxpayer's income approach appraisals and remand this case for reinstatement of the Assessor's cost approach appraisals of the Pine Haven, The Hamlets, and The Parks properties.

### B. Consideration of LIHTC Factors

■ In addition to their contentions that the income approach should be the preferred method of appraising LIHTC properties, the Taxpayers further suggest that the unique characteristics of LIHTC properties, namely the restricted rents such properties are required to charge to their tenants [10] and the tax credits received by their investors,[11] should be additional factors to be considered in performing an income approach appraisal. The Assessors and the State Tax Commissioner concede that the restricted rents of LIHTC properties, rather than the market rents of comparable properties, should be considered when they are appraised pursuant to the income approach, but they disagree that the tax credits should be excluded from such valuations. During the proceedings below, the Circuit Courts of Brooke and Hancock County refused to consider these factors because both courts determined that since the Assessors' cost approach appraisals were correct, they "need not reach the question of whether the tax credits should be included in a valuation based upon the income approach." By contrast, the Circuit Court of Cabell County overturned the Assessor's cost approach appraisals and adopted, instead,

10. LIHTC properties are required to rent their units at restricted rates. The number of units subjected to rent restrictions varies depending upon the income level of the prospective tenants. If the rent-restricted units are rented to tenants with greater incomes, then the LIHTC property must maintain more rent-restricted units; conversely, if the rent-restricted units are rented to tenants with lower incomes, then the LIHTC property must maintain fewer rent-restricted units. Rent restrictions are required to remain in place for a period of fifteen to thirty years. *See generally* 26 U.S.C. § 42 (2004).

11. The tax credits given to investors in LIHTC properties are also governed by 26 U.S.C. § 42 and may be taken over a ten-year period.

the Taxpayers' income approach appraisals, which excluded the tax credits given to the properties' investors and "use[d] ... the actual, restricted rents, that are locked in place for 30 years."

While the Taxpayers; Assessors and State Tax Commissioner; and the circuit courts have all considered the unique characteristics of LIHTC properties to be appropriate factors to consider only when appraisals are made pursuant to the income approach, the governing regulatory authority suggests otherwise. Therefore, despite our decision that the cost approach appraisals of the LIHTC properties involved herein were proper and that the Assessors were not required to use the income approach simply because the subject properties participate in the LIHTC Program, it is nevertheless appropriate to consider the unique characteristics of LIHTC properties when appraising such properties for ad valorem taxation purposes.

W. Va. C.S.R. § 110–1P–2 (1991) provides instructions for the "Appraisal of Valuation of Commercial and Industrial Real Property." Pursuant to this detailed regulation,

[t]he appraised value (market value) of commercial and industrial real property is the price at or for which the property would sell if it was sold to a willing buyer by a willing seller in an arms-length transaction without either the buyer or the seller being under any compulsion to buy or sell. In determining appraised value, primary consideration shall be given to the trends of price paid for like or similar property in the area or locality wherein such property is situated. Additionally, for purposes of appraisal of any tract or parcel of real property used for commercial or industrial purposes, including chattels real, *the appraisal shall consider the following factors:*

The location of such property;

Its site characteristics;

The ease of alienation thereof, considering the state of its title, the number of owners thereof, and the extent to which the same may be the subject of either dominant or servient easements;

The quantity of size of the property and the impact which its sale may have upon the surrounding properties;

If purchased within the previous eight years, the purchase price thereof and the date of each such purchase;

Recent sale of, or other transactions involving, comparable property;

The value of such property to its owner;

The condition of such property;

The income, if any, which the property actually produces and has produced within the next preceding three (3) years; and

Any commonly accepted method of ascertaining the market value of any such property, including techniques and method peculiar to any particular species of property if such technique or method is used uniformly and applied to all property of like species.

There are two (2) types of improvements which are considered in the appraisal process; these are improvements to the land and improvements on the land.

Improvements to the land are land improvements, the value of which are included in the value of land. Some examples of these improvements include privately owned drainage systems, driveways, walks, etc.

Improvements on the land are buildings and structures. They are valued separate and apart from the land.

In addition to improvements, other important considerations affecting the value of land, excluding farm land, are:

Location,

Size,

Shape,

Topography,

Accessibility,

Present use,

Highest and best use,

Easements,

Zoning,

Availability of utility,

Income imputed to land and

Supply and demand for land of a particular type.

*Each of these factors should be considered in the appraisal of a specific parcel. Some, however, may be given more weight than others.*

W. Va.C.S.R. §§ 110–1P–2.1.1 to 2.1.4 (emphasis added).

In this Court's recent opinion in *Foster Foundation,* the Taxpayer complained that the Assessor had not considered its unique status as a § 501(c)(3) corporation in appraising its property for ad valorem taxation purposes. Examining the above-quoted regulations, we determined that several of the factors that are required to be considered in a commercial real property appraisal encompassed the unique § 501(c)(3) characteristics of the Foster Foundation's property without specifically denominating them as such. *See Foster Found.,* 223 W.Va. at 35–36, 672 S.E.2d at 171–72. Likewise, with respect to the LIHTC properties at issue herein, several of their unique characteristics are included within the rubric of factors required to be considered in their appraisals. For example, W. Va.C.S.R. § 110–1P–2.1.1.9 requires the consideration of "[t]he income, if any, which the property actually produces and has produced within the next preceding three (3) years"; this factor, then, would require a valuation of LIHTC property to use the property's actual, restricted rents rather than comparable market rents of unrestricted property. Moreover, W. Va.C.S.R. § 110–1P–2.1.1.7 requires consideration of "[t]he value of such property to its owner" and W. Va.C.S.R. § 110–1P–2.1.3.11 requires consideration of the "[i]ncome imputed to land," both of which criteria would encompass the LIHTC tax credits allocated to such properties insofar as these tax credits add value to these properties by enabling them to charge the restricted rents requisite to participation in the LIHTC program. Therefore, the legislative regulations already mandate the consideration of the unique LIHTC property characteristics sought by the Taxpayers in this case without specifically referring to such criteria by name or through reference to the LIHTC Program.

Despite the clear directive in W. Va.C.S.R. § 110–1P–2.1.4 that "each of these factors should be considered in the appraisal of a specific parcel" of commercial real property, this Court rarely is presented with a record from which we can determine whether each of the enumerated factors has been thoroughly considered. Of the three circuit court orders from which appeals have been taken in the cases *sub judice,* only one order mentions these criteria, and it does so only by acknowledging the existence of such criteria without determining whether the Assessor performed a complete analysis of these factors. *See Pine Haven Limited Partnership v. Adkins,* Nos. 08–C–223, 08–C–224, & 08–C–225, 2008 WL 6934476 (Cabell County, W. Va., Cir. Ct. Nov. 12, 2008) (mentioning appraisal factors set forth in W. Va.C.S.R. §§ 110–1P–2.1.1 to 2.1.4, but failing to determine whether Assessor had performed complete analysis of these factors).[12] *But see Stone Brooke Limited Partnership v. Sisinni,* No. 06–P–5, 2008 WL 6934475 (Brooke County, W. Va., Cir. Ct. Jan. 28, 2008) (not mentioning or reviewing Assessor's consideration of appraisal factors set forth in W. Va.C.S.R. §§ 110–1P–2.1.1 to 2.1.4); *Heathermoor Limited Partnership v. Alongi,* No. 06–AA–2, 2008 WL 6934474 (Hancock County, W. Va., Cir. Ct. Jan. 28, 2008) (same). Similarly, of the remaining three circuit court orders addressing the ad valorem taxation of LIHTC real properties, only one mentions the regulatory factors requisite to an appraisal of commercial real property, but does not thoroughly consider such factors in reviewing the correctness of the appraisal. *See Providence Green LLC v. Assessor, et al.,* Nos. 07–CAP–7 & 08–CAP–14 (Ohio County, W.Va., Cir. Ct. Apr. 22, 2008) (mentioning appraisal factors set forth in W. Va.C.S.R.

---

**12.** The Circuit Court of Cabell County addressed the regulatory factors by commenting,

[a]dditionally, 110 W. Va.C.S.R. § [110–]1P–2.1[.]3 recognizes other important considerations affecting the value of land including: location, size, shape, topography, accessibility, present use, highest and best use, easements, zoning, availability of utilities, income imputed to land and supply and demand for land of a particular type. Further, that each of these factors should be considered although some may be given more weight than others.

*Pine Haven Limited Partnership v. Adkins,* Nos. 08–C–223, 08–C–224, & 08–C–225, at p. 10, ¶ 6, 2008 WL 6934476 (Cabell County, W. Va., Cir. Ct. Nov. 12, 2008).

§§ 110–1P–2.1.1 to 2.1.4, but failing to determine whether Assessor had performed complete analysis of these factors).[13] *But see In re: 1994 Property Tax Assessment of Twin Oaks Plaza,* No. 94–C–78 (Fayette County, W. Va., Cir. Ct. Feb. 8, 1999) (not mentioning or reviewing Assessor's consideration of appraisal factors set forth in W. Va.C.S.R. §§ 110–1P–2.1.1 to 2.1.4); *Shepherds Glen Limited Partnership v. Bordier,* No. 03–C–71 (Jefferson County, W. Va., Cir. Ct. Sept. 22, 2003) (same).

■ Therefore, it is quite apparent to this Court that, despite the fact that all of the factors set forth in W. Va.C.S.R. §§ 110–1P–2.1.1 to 2.1.4 are required to be considered when appraising commercial real property, such an analysis is rarely completed. Considering only the orders at issue in the cases *sub judice,* rarely are the requisite criteria mentioned in the circuit court's order and, even if these factors are mentioned, there is no indication that the assessing officer has thoroughly considered these criteria as required by W. Va.C.S.R. § 110–1P–2.1.4. Accordingly, to ensure that this Court has a complete record from which to review future appeals of ad valorem tax assessments of commercial real property, we hold that when a circuit court reviews an appraisal of commercial real property made for ad valorem taxation purposes, the court shall, in its final order, make findings of fact and conclusions of law addressing the assessing officer's consideration of the required appraisal factors set forth in W. Va.C.S.R. §§ 110–1P–2.1.1 to 2.1.4 (1991).[14] Because all three of the cir-

cuit court orders that have been appealed from in the cases *sub judice* have failed to indicate whether the Assessors considered the requisite factors in their appraisals of the subject commercial real property pursuant to W. Va.C.S.R. §§ 110–1P–2.1.1 to 2.1.4, we reverse the orders entered by the Brooke County Circuit Court, the Hancock County Circuit Court, and the Cabell County Circuit Court. We further remand each of these cases back to their respective circuit courts for further proceedings to conduct an analysis of whether the Assessors properly considered the requisite factors to determine whether the actual amount of the Assessors' cost approach appraisals of the Taxpayers' LIHTC properties is correct.[15]

### IV.

### CONCLUSION

For the foregoing reasons, the January 28, 2008, orders of the Circuit Courts of Brooke and Hancock County are hereby affirmed, in part, and reversed, in part, and both cases are remanded for further proceedings consistent with this opinion. Furthermore, the November 12, 2008, order of the Circuit Court of Cabell County is hereby reversed and remanded for further proceedings consistent with this opinion.

Case Number 34423—Affirmed, in part; Reversed, in part; and Remanded.

Case Number 34424—Affirmed, in part; Reversed, in part; and Remanded.

---

**13.** The language set forth in the Ohio County order is identical to that used in the Cabell County order. *See supra* note 12.

**14.** Requiring a circuit court to conduct a particular analysis and to memorialize its findings of fact and conclusions of law with regard thereto is consistent with other decisions of this Court imposing similar requirements in other contexts. *See, e.g.,* Syl. pt. 3, *Fayette County Nat'l Bank v. Lilly,* 199 W.Va. 349, 484 S.E.2d 232 (1997) ("Although our standard of review for summary judgment remains *de novo, a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review.* Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed." (emphasis added)); Syl. pt. 1, in part, *In Interest*

*of Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996) ("Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, *the circuit court* shall make a determination based upon the evidence and *shall make findings of fact and conclusions of law* as to whether such child is abused or neglected. . . ." (emphasis added)).

**15.** On remand, the circuit courts additionally should consider whether the Assessors correctly applied the cost approach when appraising the Taxpayers' properties, including considering depreciation through physical deterioration, functional obsolescence, and economic obsolescence as required by W. Va.C.S.R. § 110–1P–2.2.1.1.

Case Number 34863—Reversed and Remanded.

Chief Justice BENJAMIN and Justice KETCHUM concur and reserve the right to file concurring opinions.

BENJAMIN, Chief Justice, concurring.

As I did earlier this year in *In re: Tax Assessment Against Purple Turtle, LLC, et al. v. Gooden*, 223 W.Va. 755, 679 S.E.2d 587 (2009) (C.J. Benjamin, dissenting), I again write separately to underscore my belief that the disparity regarding the proof burdens of the State and of its citizens in property tax assessment cases in West Virginia is constitutionally impermissible. Herein, as stated in Syllabus Points 5 and 6, the majority again establishes the taxpayer's burden in tax assessment challenges to be by "clear and convincing" proof—a standard far more difficult to meet than the mere "preponderancy" burden which the majority establishes for the State. *See In re Tax Assessment of Foster Foundation's Woodlands Retirement Community*, 223 W.Va. 14, 672 S.E.2d 150 (2008) (J. Benjamin, dissenting); See also, *Mountain America, LLC v. Huffman*, 224 W.Va. 669, 687 S.E.2d 768 (2009) (No. 34426) (2009 WL 4110951), at footnote 18.

In this case, however, I conclude that even applying the lesser preponderancy burden to these taxpayers would not cause a different result from that set forth in the majority opinion. Therefore, because I believe that these taxpayers did not meet their burden of proving that the assessments resulting from the appraisals at issue were wrong by a preponderance of the evidence, I believe the majority's conclusion to be correct and I concur in its result.

KETCHUM, J., concurring.

I concur completely with the majority opinion. I write separately to make two observations.

First, I believe that the Tax Commissioner should adopt specific regulations or guidelines for county tax assessors to rely upon when appraising the value of low-income multi-family housing. Putting a "fair market value" on such housing is exceptionally difficult. These are unique properties that are rarely available on the open market, have government-mandated restricted rents, and have management, maintenance, and physical requirements that usually differ from conventional rental properties.

There are four classes of government-mandated restricted rent, low-income multi-family housing. The housing in the present case is a low-income housing tax credit ("LIHTC") project. The other three classes are: (a) subsidized mortgage projects; (b) those which proportionately encompass both LIHTC and subsidized-mortgage projects; and (c) projects that include a mix of restricted-rent and market-rate rental units.

At least 18 states have court decisions addressing LIHTC appraisal schemes.[1] I don't believe judges who ordinarily have no

---

1. The decisions are not consistent in their holdings regarding whether restricted rents and/or tax credits should be considered in valuation. *See, e.g., Woda Ivy Glen Ltd. Partnership v. Fayette Cty. Bd. of Revision*, 121 Ohio St.3d 175, 902 N.E.2d 984 (2009); *Huron Ridge LP v. Ypsilanti Tp.*, 275 Mich.App. 23, 737 N.W.2d 187 (Mich. App., 2007); *Brandon Bay Ltd. Partnership v. Payette Co.*, 142 Idaho 681, 132 P.3d 438 (2006); *Town Square Ltd. Partnership v. Clay County Bd. of Equalization*, 704 N.W.2d 896 (S.D.2005); *Great Bridge Properties, LLC v. Town of Ossipee*, 2005 WL 697951 (N.H.Super., 2005); *Cottonwood Affordable Housing v. Yavapai County*, 205 Ariz. 427, 72 P.3d 357 (Ariz.Tax, 2003); *Spring Hill, L.P. v. Tennessee State Bd. of Equalization*, 2003 WL 23099679 (Tenn.Ct.App., 2003); *In re Appeal of Greens of Pine Glen Ltd.*, 356 N.C. 642, 576 S.E.2d 316 (N.C., 2003); *Pine Pointe Housing LP v. Lowndes Co. Bd. of Tax Assessors*, 254 Ga.App. 197, 561 S.E.2d 860 (2002); *Willow Street Associates LLP v. Board of Tax Assessment Review*, 798 A.2d 896 (R.I., 2002); *Maryville Properties, LP v. Nelson*, 83 S.W.3d 608 (Mo.App., 2002); *Cascade Court L.P. v. Noble*, 105 Wash. App. 563, 20 P.3d 997 (2001); *Rainbow Apartments v. Illinois Property Tax Appeal Bd.*, 326 Ill.App.3d 1105, 260 Ill.Dec. 875, 762 N.E.2d 534 (2001); *In the Matter of Ottawa Housing Assoc., L.P.*, 27 Kan.App.2d 1008, 10 P.3d 777 (2000); *Deerfield 95 Investor Associates, LLC v. Town of East Lyme*, 1999 WL 391099 (Conn.Super., 1999); *Pedcor Investments–1990–XIII, L.P. v. State Bd. of Tax Com'rs*, 715 N.E.2d 432 (Ind. Tax, 1999); *Parkside Townhomes Associates v. Board of Assessment Appeals of York County*, 711 A.2d 607 (Pa.Cmwlth., 1998); *Bayridge Assoc. L.P. v. Dep't of Revenue*, 321 Or. 21, 892 P.2d 1002 (1995).

appraisal expertise should opine as to the proper evaluation procedure for these unique properties.

These are very complicated programs that have many technical rules governing a property's operation. The appraisal of the value of these properties does not fit into the routine evaluation process under the market, income, or cost approaches to calculating the value of real properties. The real estate market for subsidized housing is very different from the market for other rental property because of the restrictions on rent and the lack of a market for the sale of these properties. The Tax Commissioner's existing regulations are not designed to evaluate these unique restricted-rent properties, although they do require consideration of actual rents in arriving at a value. *See W. Va.C.S.R.* §§ 110–1P–2.1.1.9 [1991]. In this case, the actual rents are government-mandated restricted rents.

The taxing authorities in the more progressive states are adopting regulations or valuation guides that directly address the proper evaluation methods for the appraisal of these type properties.[2] Although at least 22 states have adopted statutes addressing the appraisal of LIHTC properties, I'm not sure that legislators have any more expertise in this arcane area in evaluating restricted income projects than appellate court judges. The Tax Commissioner should use reliable appraisal experts, learned treatises, evaluation guides of other states, and studies to develop a West Virginia guide for the fair valuation and tax assessment for the appraisal of restricted-rent properties.

My second observation is that, in reviewing the record and arguments, the Court was concerned that the record is devoid of any evidence showing that the cost approach was done correctly. In footnote 15 of the majority opinion, Justice Davis instructs the circuit courts on remand to determine if the assessors correctly applied the cost approach, including giving consideration to physical deterioration, functional depreciation, and economic obsolescence as required by *W. Va.C.S.R.* § 110–1P–2.2.1.1. There was

no mention in the record of economic obsolescence, which encompasses "legislation that restricts or impairs property rights[.]" *W. Va.C.S.R.* § 110–1P–2.2.1.1. Every learned appraisal treatise and court case examining the term "economic obsolescence" holds that government-mandated restricted rents are a form of economic obsolescence that lowers the value of real estate. This factor, which favors the landowners in this case, was completely ignored by the assessors' appraisers.

When government-mandated restricted rents are fully and fairly considered in both the income approach and the cost approach to value (as defined in *W. Va.C.S.R.* §§ 110–1P–1 to –2.5.3.4), the appraisal value under each approach should be similar.

---

**2.** *See, e.g.,* Washington Department of Revenue, "Low–Income Housing Valuation Guide: Prop-

erty Tax Assessment of Multifamily Low–Income Housing Properties" (September 2008).