**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J. and RICKMAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 4, 2024**

# In the Court of Appeals of Georgia

A23A1370. GATEWAY PINES HAHIRA, LP v. LOWNDES COUNTY BOARD OF TAX ASSESSORS.

RICKMAN, Judge.

Gateway Pines Hahira, LP ("Gateway Pines") appeals from the superior court's order granting partial summary judgment to the Lowndes County Board of Tax Assessors ("the Board") in this dispute concerning the ad valorem tax assessment of a rent-restricted apartment complex. On appeal, Gateway Pines argues that the trial court erred by holding that (1) excluding certain tax credits from the fair market value of the property at issue would violate the uniformity provisions of the Georgia Constitution; (2) the income approach to valuation is inapplicable and may not be used to value the property; and (3) the tax credits should not be excluded when

using the cost approach or considering unusual circumstances. For the reasons that follow, we affirm.

The record shows that Gateway Pines owns an apartment complex in Lowndes County, Georgia. All of the rental units have various income and rent restrictions. The apartment complex is eligible to receive federal low-income housing tax credits under Section 42 of the Internal Revenue Code of 1986, as amended, and state low-income housing tax credits (together "Section 42 tax credits" or "LIHTCs").

The Board issued a tax assessment notice to Gateway Pines valuing the apartment complex at $5,363,682 for the 2018 tax year. Gateway Pines appealed the assessment to the Board, which made no changes. Gateway Pines and the Board subsequently agreed to waive an appeal to a hearing officer or the Lowndes County Board of Equalization and to initiate an appeal directly to the Lowndes County Superior Court.

The Board filed two motions for partial summary judgment. In the first motion, the Board requested that the trial court rule that "excluding low-income housing tax credits awarded a Section 42 property from the assessment of fair market value would violate Georgia law including the taxation uniformity provision of the Georgia

Constitution." In the second motion, the Board sought a ruling that for purposes of determining the fair market value of a Section 42 property for the subject year:

> (a) The sales comparison approach to valuation of property is inapplicable and may not be used to value a Section 42 property for ad valorem property tax purposes absent evidence of sales of other Section 42 properties with unused income tax credits.
>
> (b) The income approach to valuation of property is inapplicable and may not be used to value a Section 42 property for ad valorem property tax purposes based on the current structure of LIHTCs which the Supreme Court has held does not generate actual income to the taxpayer.
>
> (c) Tax assessors have alternative methods to the sales comparison and income approaches of assessing the fair market value of Section 42 properties. These alternative methods are set forth in regulatory law that (a) directs the appraisers to consider the cost approach to valuation and (b) provides when unusual circumstances are affecting value, they should be considered. OCGA § 48-5-2 (3) (B) (vii) (I) and (II) do not preclude consideration of LIHTCs in determining the fair market value of a Section 42 property when using these alternative approaches.

The trial court granted the Board's motions for partial summary judgment, ruling as follows:

> As for the Board's First Motion, the Court finds that the ruling of the Supreme Court case [*Heron Lake II Apts. v. Lowndes County Bd. of Tax Assessors*, 306 Ga. 816 (833 SE2d 528) (2019) ("*Heron Two*")] shall

3

apply to the case at hand. Therefore, Section 42 Tax Credits shall be considered a benefit connected to the real estate itself. Further, excluding these benefits from the fair market value would grant preferential treatment to these properties which would be a violation of the taxation uniformity provision of the Georgia Constitution.

As to the Board's Second Motion, the Court holds that OCGA § 48-5-2 (3) (B) (vii) shall be applied in the same way in which the Court in *Heron Two* applied the statute. Therefore, this Court is affirming three contentions that apply when assessing the value of Section 42 properties: 1) the sales comparison approach is not to be used unless there is evidence of sales of other Section 42 properties with unused tax credit; 2) the income approach is inapplicable and may not be used based on the current structure of the tax credits which does not provide any actual income to the taxpayer; and 3) tax assessors can use other methods to asses[s] the value of the property, either the Cost Approach or the Unusual Circumstances method. The tax credits should not be excluded when using either of those two methods.

This appeal followed.

1. The taxation uniformity provision of the Georgia Constitution, Ga. Const. of 1983, Art. VII, Sec. I, Par. III (a) ("taxation uniformity provision"), requires that property of the same class be assessed and taxed uniformly. *Heron Lake II Apts. v. Lowndes County Bd. of Tax Assessors*, 299 Ga. 598, 605 (791 SE2d 77) (2016) ("*Heron One*"). Gateway Pines contends that the trial court erred by holding that excluding

4

Section 42 tax credits from the fair market value of the property at issue would violate the taxation uniformity provision. We disagree.

In *Heron One*, the Supreme Court of Georgia held that OCGA § 48-5-2 (3) (B.1), which excludes low-income housing income tax credits from consideration for the purpose of assessing ad valorem tax, is unconstitutional because it violates the taxation uniformity provision. *Heron One*, 299 Ga. at 610.[1] The Supreme Court in *Heron One* found the analysis of the Court of Appeals in *Pine Pointe Housing v. Lowndes County Bd. of Tax Assessors*, 254 Ga. App. 197 (561 SE2d 860) (2002), to be apposite. *Heron One*, 299 Ga. at 607. As this Court discussed in *Pine Pointe Housing*, property is generally taxed at its fair market value, and the Georgia General Assembly has defined fair market value as "the amount a knowledgeable buyer would pay for the property and a willing seller would accept for the property at an arm's length, bona fide sale." (Punctuation omitted.) *Pine Pointe Housing*, 254 Ga. App. at 198 (1) (citing OCGA § 48-5-2 (3)). The Court of Appeals identified various factors to be considered in determining fair market value, including Section 42 tax credits. Id. at 198-199 (1).

---

[1] As discussed in Division 2, the Georgia General Assembly subsequently amended OCGA § 48-5-2.

The Court of Appeals explained why Section 42 tax credits are pertinent to fair market value:

> The credits have value to a taxpayer with federal income tax liability and can be "passed through" a partnership structure to those taxpayers. Because Section 42 tax credits are generated by a designated property, a third party would pay for the value as part of that property's sale price in a bona fide, arm's length transaction. Furthermore, the tax credits go hand in hand with restrictive covenants that require the property to charge below-market rent. By statute, these restrictions are required to be considered by the assessor. If viewed in isolation, the rental restrictions would artificially depress the value of the property for tax valuation purposes.

(Citation omitted.) Id. at 199 (1).

The Supreme Court concluded in *Heron One* that the "tax credits are a benefit connected to the real estate itself," and LIHTCs are "part and parcel of the tangible real estate and may properly contribute to an assessment of fair market value." (Citation and punctuation omitted.) *Heron One*, 299 Ga. at 608-610. The Court characterized LIHTCs as "a property right which plainly affects the amount a knowledgeable buyer would pay and a willing seller would accept in a sale," and explained that barring LIHTCs from consideration would effectively nullify the

statutory definition of fair market value. Id. at 610. The Supreme Court therefore held that "inasmuch as OCGA § 48-5-2 (3) (B.1) exempts these income tax credits from consideration in determining the fair market value of the properties at issue, the statute grants preferential treatment for ad valorem tax purposes and creates a subclass of tangible property other than as permitted by the State Constitution" which "runs afoul of the taxation uniformity provision." Id. at 610.

In *Heron Lake II Apts. v. Lowndes County Bd. of Tax Assessors*, 306 Ga. 816 (833 SE2d 528) (2019) ("*Heron Two*"), the Supreme Court explained that in *Heron One*, the Court

> concluded that the LIHTCs 'are a benefit connected to the real estate itself,' that the tax credits are not 'intangible personal property' because of their dependence on the real estate giving rise to them, and that excluding them from the assessment of fair market value 'grants preferential treatment for ad valorem taxation purposes and creates a subclass of tangible property other than as permitted by the State Constitution,' which 'runs afoul of the taxation uniformity provision.'

*Heron Two*, 306 Ga. at 817-818 (1) (a) (citing *Heron One*, 299 Ga. at 608-610).

The trial court's ruling that excluding Section 42 tax credits from the fair market value of Section 42 properties would be a violation of the taxation uniformity

provision is consistent with the Supreme Court's holding in *Heron One* and the Supreme Court's explanation of that holding in *Heron Two*. See *Heron Two*, 306 Ga. at 817-818 (1) (a) (citing *Heron One*, 299 Ga. at 608-610). Excluding Section 42 tax credits from the assessment of fair market value would be inconsistent with the statutory definition of fair market value and would grant preferential treatment for ad valorem taxation purposes. See *Heron One*, 299 Ga. at 610. Thus, the trial court did not err in holding that excluding Section 42 tax credits from the fair market value of Section 42 properties would violate the taxation uniformity provision.

2. Gateway Pines argues that the trial court erred in holding that the income approach is inapplicable and cannot be used in valuing Section 42 properties. We considered the same issue in *Freedom Heights v. Lowndes County Bd. of Tax Assessors*, 369 Ga. App. 725, 727-730 (1) (894 SE2d 438) (2023), and the same analysis applies here.

As we stated in *Freedom Heights*, after the Supreme Court's decision in *Heron One*, the Georgia General Assembly in 2017 amended OCGA § 48-5-2, revising OCGA § 49-5-2 (3) (B) (vi) to provide that tax assessors shall apply, among other criteria, the following:

Rent limitations, higher operating costs resulting from regulatory requirements imposed on the property, and any other restrictions imposed upon the property in connection with the property being eligible for any income tax credits with respect to real property which are claimed and granted pursuant to either Section 42 of the Internal Revenue Code of 1986, as amended, or Chapter 7 of this title or receiving any other state or federal subsidies provided with respect to the use of the property as residential rental property; provided, however, that properties described in this division shall not be considered comparable real property for the assessment or appeal of assessment of properties not covered by this division[.]

See Ga. L. 2017, p. 55, § 1. The 2017 amendment also added to subparagraph (B) a new division (vii), which provides as follows:

(I) In establishing the value of any property subject to rent restrictions under the sales comparison approach, any income tax credits described in division (vi) of this subparagraph that are attributable to a property may be considered in determining the fair market value of the property, provided that the tax assessor uses comparable sales of property which, at the time of the comparable sale, had unused income tax credits that were transferred in an arm's length, bona fide sale.

(II) In establishing the value of any property subject to rent restrictions under the income approach, any income tax credits described in division (vi) of this subparagraph that are attributable to property may be considered in determining the fair market value of the property, provided

that such income tax credits generate actual income to the record holder
of title to the property[.]

OCGA § 48-5-2 (3) (B) (vii).

In *Heron Two*, the Supreme Court explained that OCGA § 48-5-2 (3) (B) (vii) (I) and (II) "tell tax assessors how they can use the sales comparison and income approaches in determining the fair market value of Section 42 properties" and held that low-income housing tax credits do not constitute "actual income" under OCGA § 48-5-2 (3) (B) (vii) (II). *Heron Two*, 306 Ga. at 821, 823 (3). The Supreme Court then considered the constitutionality of OCGA § 48-5-2 (3) (B) (vii). *Heron Two*, 306 Ga. at 824-828 (4). The Court noted that

all presumptions are in favor of the constitutionality of an act of the legislature and that before an Act of the legislature can be declared unconstitutional, the conflict between it and the fundamental law must be clear and palpable and [the Supreme] Court must be clearly satisfied of its unconstitutionality. Moreover, because statutes are presumed to be constitutional until the contrary appears, the burden is on the party alleging a statute to be unconstitutional to prove it.

(Citation and punctuation omitted.) Id. at 825 (4). The Court also noted that if "the language of an act is susceptible of a construction that is constitutional, and another

10

that would be unconstitutional, that meaning or construction will be applied which will sustain the act." (Citation and punctuation omitted.) Id. The Supreme Court held that "OCGA § 48-5-2 (3) (B) (vii) (I) and (II) are not unconstitutional, because they do not completely preclude tax assessors from considering LIHTCs in determining fair market value; rather, they simply limit the applicability of the sales comparison and income approaches." Id. at 827 (4).

The Supreme Court explained OCGA § 48-5-2 (3) (B) (vii) (II)'s limitation on the applicability of the income approach as follows:

> With respect to the income approach, consistent with our conclusion above — that LIHTCs as currently structured do not constitute "actual income" for the purposes of OCGA § 48-5-2 (3) (B) (vii) (II) — we agree that this method has a narrow range of potential applications. But that does not mean that it cannot be applied in *any* circumstances, or that it is arbitrary or unreasonable. For example, while we hold that today's LIHTCs cannot be counted as "actual income" under the income approach, we do not hold that the statute cannot be applied as written – i.e., in circumstances where a tax assessor could show that LIHTCs "generate actual income," such as where LIHTCs resulted in a net payment to the taxpayer rather than merely reducing her tax liability. Cf. OCGA § 48-7-40.36 (g) (1) (providing refundable income tax credits to timber farmers impacted by Hurricane Michael). And for those reasons,

11

OCGA § 48-5-2 (3) (B) (vii) (II)'s income approach is not arbitrary or unreasonable.

*Heron Two*, 306 Ga. at 827 (4).

As construed by the Supreme Court in favor of its constitutionality, OCGA § 48-5-2 (3) (B) (vii) (II) limits the applicability of the income approach to "circumstances where a tax assessor could show that LIHTCs 'generate actual income.'" *Heron Two*, 306 Ga. at 827 (4). And, as currently structured, "LIHTCs . . . do not constitute 'actual income' for the purposes of OCGA § 48-5-2 (3) (B) (vii) (II)." Id. Consequently, as LIHTCs are currently structured, tax assessors may not use the income approach in determining the fair market value of Section 42 properties. Id.

Gateway Pines argues that under OCGA § 48-5-2 (3), assessors are required to consider the income approach in determining the fair market value of income-producing Section 42 properties. However, the Supreme Court limited the applicability of the income approach in determining the fair market value of Section 42 properties despite being fully aware of OCGA § 48-5-2 (3). See *Heron Two*, 306 Ga. at 824 (4), n. 7 ("OCGA § 48-5-2 (3) defines the 'fair market value of property' as

12

'the amount a knowledgeable buyer would pay for the property and a willing seller would accept for the property at an arm's length, bona fide sale,' and says that '[t]he income approach, if data are available, shall be utilized in determining the fair market value of income producing property . . . .'"). Thus, the trial court did not err by finding that "the income approach is inapplicable and may not be used based on the current structure of the tax credits which does not provide any actual income to the taxpayer."

3. In *Heron Two*, the Supreme Court noted that tax assessors are not limited to using either the sales comparison or income approaches in determining the fair market value of Section 42 properties. *Heron Two*, 306 Ga. at 827 (4). The Court pointed out that "the Appraisal Procedures Manual — which is part of the Department of Revenue's regulations — directs appraisers to consider the sales comparison, income and cost approaches in determining the fair market value of real property[.]" Id. And, "the Appraisal Procedures Manual states that 'when unusual circumstances are affecting value, they should be considered.'" (Citation and punctuation omitted.) Id. at 828 (4). Gateway Pines contends that the trial court erred in holding that Section

13

42 tax credits should not be excluded when using the cost approach or considering unusual circumstances. Again, we disagree.

OCGA § 48-5-2 (3) (B) (vi) requires tax assessors to apply rent restrictions and higher operating costs in determining the fair market value of Section 42 property. *Bainbridge Ltd. v. DeKalb County Tax Assessors*, 362 Ga. App. 654, 657-658 (1) (869 SE2d 606) (2022). And, when rent restrictions are applied, excluding the Section 42 tax credits that "go hand in hand" with the rent restrictions "would artificially depress the value of the property for tax valuation purposes." *Pine Pointe Housing*, 254 Ga. App. at 198 (1). As discussed in Division 1, the Supreme Court described LIHTCs as "a property right which plainly affects the amount a knowledgeable buyer would pay and a willing seller would accept in a sale[.]" *Heron One*, 299 Ga. at 610. Consequently, the trial court did not err in holding that Section 42 tax credits should not be excluded when using the cost approach or when unusual circumstances are considered.

*Judgment affirmed. Mercier, C. J., and McFadden, P. J., concur.*